NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

Mario TURTUR, Jr., Defendant.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

Chris TURTUR and Stephen P. Turtur, d/b/a C & S Joint Venture, Defendants.

United States District Court, S.D. New York.

Aug. 23, 1990.

---

Richard F. Russell, Denis Collins, D'Amato & Lynch, New York City, for plaintiff.

Neal Schwarzfeld, Schwarzfeld, Ganfer & Shore, New York City, for defendant.

STANTON, District Judge.

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), an issuer of financial guarantee bonds, sues to enforce indemnity agreements between itself and limited partners in a tax shelter limited partnership, and to enforce its rights as subrogee on the limited partners' promissory notes which it honored on their behalf.

National Union had issued a bond which guaranteed, to the limited partnership and to the bank which financed the limited partnership, that the limited partners would make all of their capital contributions represented by the promissory notes. When the limited partners stopped making their required contributions, National Union made them on their behalf. Now it seeks reimbursement, under the indemnity agreements defendants gave it at the time it guaranteed their payments, and as subrogee on the notes on which they defaulted.

The defendant limited partners, Mario, Chris, and Stephen Turtur move to transfer these actions to the United States District Court for the Southern District of Texas under 28 U.S.C. § 1404(a). National Union moves to compel discovery.

The motion to transfer is granted. The motion to compel discovery is denied without prejudice.

## BACKGROUND

National Union, a Pennsylvania corporation, has its principal place of business in New York City and does business in many states, including Texas. The Turturs are residents of Texas.

In December 1982 the Turturs purchased limited partnership interests in American National Associates 367 ("ANA"), a New York limited partnership. ANA was one of several computer equipment leasing limited partnerships organized by one Barry Trupin. Rothschild Registry International Inc. ("Rothschild"), an entity Trupin controlled, was ANA's general partner. The purchase price for Mario Turtur's interest consisted of an initial cash payment of $28,000 and promissory notes ("notes") for $429,000. The purchase price for Chris and Stephen Turtur's interest consisted of an initial cash payment of $9,600 and notes for $143,000.

The notes were assigned to La Salle National Bank (the "Bank") in return for loans of working capital which the Bank made to ANA. To induce the Bank to make the loans and accept assignment of the notes, the Turturs obtained National Union's guarantee of payment of their notes.

In return, the Turturs executed indemnity agreements in which they agreed to reimburse National Union for any payments it made on their behalf. The indemnity agreements contain permissive forum selection clauses:

> Any action or proceeding of any kind against the Undersigned arising out of or by reason of this Indemnification ... Agreement may be brought in any state

or federal court of competent jurisdiction in any County in the State of New York, in addition to any other court in which such action might properly be brought.

The Turturs made the first two payments on their notes, but failed to make the third payments which were due on March 15, 1985. National Union made those payments to the Bank on the Turtur's behalf. In October 1985 National Union commenced actions against Mario Turtur, No. 85 Civ. 8024, and Chris and Stephen Turtur, No. 85 Civ. 8025 (the " '85 actions"), to recover those amounts.

The Turturs did not make the fourth and fifth payments on their notes, which were due on March 15, 1986 and 1987. National Union again paid the Bank on their behalf. In May 1989 National Union commenced actions against Mario Turtur, No. 89 Civ. 3427, and Chris and Stephen Turtur, No. 89 Civ. 3428 (the " '89 actions"), to recover the amount it paid the Bank.

Both the '85 and '89 actions (collectively referred to as the "New York actions") seek reimbursement under the terms of the indemnity agreements, and by subrogation to the Bank's rights under the Turturs' notes.

### Other Proceedings

In 1987 National Union moved for summary judgment in the '85 actions. The Turturs, in opposition, argued that the private placement memorandum ("PPM") they had received in connection with their ANA investment, and an accountant's report and legal opinion included with the PPM, misrepresented the tax advantages and other economic benefits that they would realize from their investment, and that National Union was aware of those misrepresentations.[1] This court granted summary judgment on National Union's claim for reimbursement under the indemnity agreement, and denied summary judgment on its claim for reimbursement as subrogee on the notes. [1987 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 93,765, 1988 WL 48695 (S.D. N.Y. May 6, 1988), *rearg. denied,* [Current]

Fed.Sec.L.Rep. (CCH) ¶ 93,979, 1988 WL 87297 (S.D.N.Y. Aug. 10, 1988). The Turturs appealed. The Court of Appeals reversed the grant of summary judgment on National Union's claim for reimbursement under the indemnity agreement, and affirmed the denial of summary judgment on its claim for reimbursement as subrogee on the notes. 892 F.2d 199 (2d Cir.1989). The Court of Appeals remanded the cases to this court for further proceedings. *Id.* at 207–08.

While National Union's summary judgment motion was pending before this court, the Turturs commenced an action in a Texas state court (the "Texas action") against National Union, ANA, Trupin, Rothschild, the accounting firm that prepared the report included with the PPM (Cornick, Garber & Sandler ("Cornick")), the law firm that prepared the legal opinion included with the PPM (Stein, Bliablias & McGuire), and others, seeking rescission of their investments and damages. *Turtur v. Rothschild Registry International, Inc. et al.,* No. 87–60477 (Harris County Dist.Ct., filed Dec. 29, 1987). As in the New York actions, the Turturs allege that the PPM contained misrepresentations about the tax advantages and other economic benefits that they would realize from their investment in ANA.

Cornick removed the case to the United States District Court for the Southern District of Texas, on the basis that the citizenship of the parties was diverse. *See* 28 U.S.C. § 1441(a). Cornick then agreed to remand the case to the Texas state court. Accordingly, United States Magistrate Karen Brown remanded the case. When National Union objected to the remand, Magistrate Brown vacated it. The Turturs then moved to set aside the Magistrate's vacatur of the remand. That motion is pending.

The Turturs now move to transfer the New York actions to the Southern District of Texas. National Union moves to compel discovery.

---

1. The Turturs oppose National Union's claim for reimbursement in the '89 actions on the same ground.

**DISCUSSION**

## 1. Transfer

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The threshold question is whether the action could have been brought in the transferee forum in the first place. *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The Turturs are Texas residents. National Union sues for over $10,000.[2] Thus, since citizenship is diverse, there is federal subject matter jurisdiction, 28 U.S.C. § 1332, and venue in the Southern District of Texas where the Turturs reside would be proper under 28 U.S.C. § 1393(a).

The indemnity agreements did not establish New York as the exclusive forum for litigation, but rather as a permissible forum, leaving the action subject to transfer. *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1464–65 (S.D.N.Y.1983); *Coface v. Optique Du Monde, Ltd.*, 521 F.Supp. 500, 507 (S.D.N.Y.1980).

As movants, the Turturs bear the burden of establishing the propriety of transferring these cases. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The pertinent factors to be considered in determining whether transfer is proper include (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining willing witnesses; (5) the relative access to sources of proof; (6) where the events at issue took place; (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (8) the interests of justice in general.

*Cain v. New York State Board of Elections*, 630 F.Supp. 221, 226 (E.D.N.Y.1986); *see also Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967).

The Turturs state:

The basis for this motion to transfer venue is that, because of the overlap of the issues raised in these cases and an action commenced by the Turturs that is pending in the Southern District of Texas, all the evidence here will necessarily duplicate the evidence in the Texas action, so that, absent transfer, all the witnesses and parties will be required to testify at two separate depositions about the same events involving the same parties and to provide document discovery on two separate occasions. If, on the other hand, this action is transferred to Texas, which is the only jurisdiction in which all the parties are present, discovery can be consolidated or, at the minimum, coordinated, so as to avoid duplicative discovery.

Defendants' Reply Memorandum of Law, pp. 1–2.

The presence of related litigation in the transferee forum weighs heavily in favor of transfer, since litigation of related claims in the same tribunal results in "more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest." *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y.1988), citing *Levitt v. State of Maryland Deposit Insurance Fund Corp.*, 643 F.Supp. 1485 (E.D.N.Y. 1986); *see also Berg v. First American Bankshares, Inc.*, 576 F.Supp. 1239, 1243 (S.D.N.Y.1983); *Bolton v. Tesoro Petroleum Corp.*, 549 F.Supp. 1312, 1317 (E.D.Pa. 1982). Accordingly, "as a general proposition, cases should be transferred to the district where related actions are pending." *Securities and Exchange Commission v.*

2. At the time these actions were commenced, 28 U.S.C. § 1332 required that the matter in controversy exceed the sum of $10,000. Section 1332 has since been amended to require the matter in controversy to exceed the sum of $50,000.

**264**

First National Finance Corp., 392 F.Supp. 239, 241 (N.D.Ill.1975).[3]

National Union argues that these actions should not be transferred because (1) the forum selection clauses in the indemnification agreements should be enforced, (2) its underwriting and claims departments files relative to this litigation are in New York, Affidavit of Irving V. Goldstein, sworn to May 18, 1990, ¶ 9, (3) most of the witnesses it would call are located in New York, id. at ¶¶ 7–8, and (4) many of the events at issue occurred in New York.

Those arguments have some force. However, the overwhelming reality is that absent transfer of these actions, there will be two litigations in different fora involving the same parties and issues. In both the New York and Texas actions, the Turturs allege that the PPM fraudulently misrepresented the tax advantages and other economic benefits that they would realize from their investment in ANA, and that National Union was aware of those misrepresentations. The parties who allegedly committed the fraud are defendants in the Texas action. Separate litigations in different fora would result in duplicative discovery, pre-trial and trial proceedings, witnesses testifying twice about the same issues, and a waste of the parties' and the courts' resources. Moreover, they may lead to inconsistent results. On the other hand, transfer of the New York actions would allow coordinated discovery, pre-trial and trial proceedings, and for resolution of National Union's and the Turturs' claims in one forum, where those who allegedly committed the fraud are present.

Accordingly, transfer of the New York actions to the Southern District of Texas is warranted.

## CONCLUSION

Defendants' motion to transfer these actions to the United States District Court for the Southern District of Texas is grant-

ed. Plaintiff's motion to compel discovery is denied without prejudice.

---

**3.** The pendency of the Turtur's motion to set aside the vacatur of the remand of the Texas action does not affect the result reached here. Even if the Texas action is remanded to a Texas state court, having the actions litigated in the same geographical area would still facilitate the coordination of pre-trial discovery, and save the time and energies of the witnesses, the parties, and the attorneys. See Comptroller of Currency v. Calhoun First National Bank, 626 F.Supp. 137, 141 (D.D.C.1985).