**Pearline COULTMAN, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION a/k/a Amtrak and CSX Transportation, Inc., Defendants.**

No. 93–CV–3512 (JRB).

United States District Court,
E.D. New York.

March 30, 1994.

Michael F. Kremins, Raskin & Kremins, New York City, for plaintiff.

Michael S. Landman, Siff, Rosen & Parker, New York City, for defendants.

### MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

The defendants National Railroad Passenger Corporation ("Amtrak") and CSX Transportation, Inc. ("CSX") move under 28 U.S.C. § 1404(a) for an order transferring the above-captioned case to the United States District Court for the Eastern District of Virginia. Defendants argue that the interest of justice, convenience of the parties and witnesses, and judicial economy best will be served by transferring the action to that forum. For the reasons set forth below, the Court grants the defendants' motion.

## BACKGROUND

On or about August 12, 1992, plaintiff Pearline Coultman allegedly sustained injuries to her neck, back, shoulders, and elbow when the Amtrak "Colonial," a passenger train en route from New York to Hampton, Virginia, suddenly derailed, throwing her out of her seat and onto the floor. The Colonial was travelling on defendant CSX's main track in Newport News, Virginia at the time of the accident.

Subsequent investigation conducted by local state and federal law enforcement officials revealed that the Colonial derailment resulted from an intentional act of criminal vandalism. Vandals forcibly had entered a locked, electronically-controlled CSX track switch and manually thrown the switch, redirecting the Colonial onto a railroad siding designed to accept trains operating at drastically reduced speeds. Joseph L. Loomis and Raymond Gary Borman, Jr. were apprehended in Virginia and charged with violating 18 U.S.C. § 1992 [1] in connection with the derailment. Loomis and Borman subsequently confessed to the crime, admitting that they had thrown the switch and that they intentionally had done so at a time when the Colonial already had passed a warning signal that could have alerted the engineer and allowed him to stop the train. The two pleaded guilty and were convicted of conspiring to derail the Colonial. Borman presently is serving a 16–year term of imprisonment; Loomis awaits sentencing.

Plaintiff Coultman commenced the instant action against defendant Amtrak in the Supreme Court of the State of New York, Kings County, on or about June 10, 1993. In August 1993, defendant Amtrak removed the action to this Court, asserting jurisdiction on the basis of diversity.[2] On or about October 10, 1993, plaintiff filed with this Court an amended complaint adding defendant CSX. In the amended complaint, plaintiff alleges that the defendants' negligence in the owner-ship, operation, maintenance, and control of the train and the railroad tracks proximately caused the derailment. Specifically, plaintiff claims that defendant Amtrak operated the Colonial at an excessive rate of speed and failed to obey applicable regulations and control signals. Defendant CSX's purported negligence apparently arises from its failure properly to maintain the tracks and protect the integrity of the switch thrown by Loomis and Borman. In defense of the action, Amtrak and CSX argue vehemently that they cannot be held liable for the unforeseeable criminal acts of Loomis and Borman, which they assert constitute the sole legal cause of the derailment and plaintiff's injuries.

Other passengers on board the Colonial during the August 12, 1992 derailment have instituted personal injury actions against defendants Amtrak and CSX in the District Court for the Eastern District of Virginia, asserting claims of negligence nearly identical to those asserted here. See Anderson et al. v. The National Railroad Passenger Corp. d/b/a Amtrak and CSX Transportation, Inc., Civ. Action No. 2:92 Civ. 1040 (E.D.Va.1992). Negligence claims asserted by a total of fifty-one passengers have been joined and consolidated in the Anderson action. Discovery currently is underway, and the case is set for trial to commence in July 1994.

## DISCUSSION

■ Section 1404(a) vests in the federal district courts discretion to transfer an action to a district in which the action might have been brought if the court determines that "the convenience of parties and witnesses" and "the interests of justice" warrant transfer. See 28 U.S.C. § 1404(a); Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988). The undisputed goal of Section 1404(a) "is to prevent waste 'of time, energy and money'" and

---

1. Section 1992 of Title 18 provides in relevant part that "[w]hoever willfully derails, disables, or wrecks any train, engine, motor unit, or car used, operated, or employed in interstate or foreign commerce by any railroad * * * * Shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

2. Although defendant's removal papers asserted federal jurisdiction founded solely on diversity of citizenship, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1349, in that the United States owns greater than one-half of the capital stock of defendant Amtrak.

"to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 [1960] ). Thus, Section 1404(a) directs the court to conduct an "individualized, case-by-case consideration of convenience and fairness." *Id.* 376 U.S. at 622, 84 S.Ct. at 812.

The threshold inquiry on a Section 1404(a) motion is whether the transferee district, in this case the Eastern District of Virginia, is a district in which the action originally "might have been brought." Section 1391(b) of Title 28 sets forth the proper forum in which to commence an action, such as this one, wherein jurisdiction is not founded solely on diversity of citizenship. That section provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (1993). Because the Court concludes that a substantial part of the events giving rise to the instant claim transpired in the Eastern District of Virginia, that district constitutes a proper place of venue for the trial of this action pursuant to Section 1391(b)(2).

▪ The Court next must inquire whether the convenience of party and non-party witnesses and the interests of justice warrant transfer of the action. Defendants must meet the substantial burden of demonstrating by clear-cut evidence that "the balance of conveniences and the interests of justice favor a trial in the proposed transferee forum." *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. 724, 727 (E.D.N.Y.1980). *Accord Levitt v. State of Maryland Deposit Ins. Fund Corp.,* 643 F.Supp. 1485, 1492 (E.D.N.Y.1986). In reaching this determination, a variety of factors must be considered, including:

> (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) availability of process to compel the attendance of witnesses to testify at trial; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally, (10) the Court should also consider how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

*Frasca v. Yaw,* 787 F.Supp. 327, 331 (E.D.N.Y.1992). It is incumbent upon the moving party to demonstrate clearly that the balance of factors tips decidedly in favor of transfer. Applying the above criteria to the present action, the Court concludes that the defendants have made the requisite showing.

### Convenience of Parties

When reviewing a transfer motion, the Court's "logical starting point is a consideration of the residence of the parties." *United States Fidelity and Guar. Co. v. Republic Drug Co., Inc.,* 800 F.Supp. 1076, 1079 (E.D.N.Y.1992). Here, plaintiff is a resident of her chosen forum, the Eastern District of New York. Defendants, both corporations, are said to reside for venue purposes "in any judicial district in which [they are] subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Defendant Amtrak admittedly is a corporation organized and existing under the laws of the District of Columbia, which maintains its principal place of business in Washington, D.C. and transacts business within the State of New York. Defendant CSX is a Kentucky corporation that the plaintiff alleges also conducts business within this State.

Viewing the relevant circumstances, the relative convenience of the parties provides little support for defendants' motion to transfer. Plaintiff is a self-supporting, 77–year–old who allegedly suffers from several disabling physical ailments, rendering travel diffi-

cult both physically and economically. (See Affidavit of Pearline Coultman, sworn to December 26, 1993 [the "Coultman Aff."], ¶¶ 2, 9, 10.) It seems obvious that plaintiff likely will be inconvenienced to a much greater degree if required to litigate her claim in Virginia than would the corporate defendants if required to litigate in this forum, a district in which they currently conduct business.

*Relative Means of the Parties*

Where, as here, a "disparity between the parties exists, such as an individual plaintiff suing a large corporation, the Court may also consider the relative means of the parties in determining whether to transfer." *Frasca,* 787 F.Supp. at 332. As noted above, the defendants are corporations purportedly conducting interstate business, while plaintiff alleges severe financial constraints and the lack of funds necessary to travel to and from the proposed forum to prosecute this action. (See Coultman Aff., ¶ 10.) Under these circumstances, the Court holds that this factor weighs against transfer.

*Convenience of the Witnesses*

Although the convenience and relative means of the parties favor keeping the case in this District, the convenience of the non-party witnesses strongly supports defendants' motion to transfer the action to the Eastern District of Virginia. "The convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether a transfer should be granted" under Section 1404(a). *United States Fidelity and Guar. Co.,* 800 F.Supp. at 1080–81. Indeed, the presence of witnesses upon whose testimony the parties will rely at trial and the location of other evidentiary sources constitutes "a major factor to be considered in a transfer action." *Frasca,* 787 F.Supp. at 331. Proper consideration of this factor requires the movant to identify with specificity the witnesses it intends to call at trial and the general content of their proposed testimony. *United States Fidelity and Guar. Co.,* 800 F.Supp. at 1081. The defendants easily have fulfilled this requirement.

Defendants Amtrak and CSX have specified at least eight party and non-party witnesses they intend to call at trial, all of whom are situated in the Eastern District of Virginia. Among these witnesses are: FBI Special Agent Michael F. McMann, who arrested and heard the confession of Loomis; CSX Special Agents John Herrin and Jim Lansford, who investigated the derailment; Officer James S. Daley of the Newport News Police Department, who also investigated the cause of the derailment; Deputy Charlie Gray of the Sussex County Sheriff's Office, who recovered two switch locks from Loomis's car; Thomas Breedan, who will testify as to CSX's switch and track maintenance procedures; unidentified members of Portsmouth Orthopedic Associates, Inc., who treated plaintiff for her injuries on the day of the accident; and the Amtrak crew, based in Richmond, Virginia, who will testify regarding operation of the Colonial at the time of the derailment. Defendants assert that nearly all of the testimony needed to exonerate them of liability—including the testimony of Loomis and Borman, if necessary—will come from witnesses located within the proposed transferee forum.

Conversely, plaintiff identifies several witnesses located in this forum, including: the plaintiff herself; Dr. Laurian Jacoby, M.D., plaintiff's treating physician; unidentified members of Kingsbrook Hospital who performed various tests on plaintiff; plaintiff's travelling companion, Ms. Catherine Smith; and Mr. Henry Veal, a fellow passenger who also purchased plaintiff's train ticket for her in New York City. Apparently, the majority of plaintiff's New York witnesses will testify as to some of the facts surrounding the accident and the nature and extent of her injuries.

Plaintiff has identified no witness within this forum whose testimony bears on the central issues in this case, that is the foreseeability of Loomis and Borman's criminal acts, defendants' alleged negligence, and the degree of fault, if any, to be apportioned among Loomis, Borman, and the defendants. Moreover, plaintiff cannot conceivably argue that two of the New York witnesses identified above, Catherine Smith and Henry Veal, will be inconvenienced in *any* way if required to appear before the Virginia court: Apparently, Ms. Smith and Mr. Veal are named plain-

tiffs in the consolidated *Anderson* action currently pending in that forum, and of necessity will travel to Virginia to prosecute the negligence claims against the defendants. Indeed, it is possible that plaintiff herself will be called upon to testify before the Virginia court as a witness on behalf of Ms. Smith or Mr. Veal in the *Anderson* action.

This Court is mindful of the plaintiff's age and poor health, and her lack of funds to pursue this litigation outside this forum. However, these factors do not outweigh the costs and inconvenience necessarily associated with requiring the non-party witnesses identified by defendants to appear before this Court. *See Musetti v. Amtrak, Inc.*, Civ. Action No. 87–2160, slip op., at 19–20 (E.D.N.Y.1988). Because the Court believes that the presentation of witness testimony and other relevant evidence located in Virginia will help resolve plaintiff's claims most "fairly, expeditiously and inexpensively," based on the relative convenience of the witnesses, the Eastern District of Virginia "is the optimal forum" in which to try this action. *Id.*

*Locus of Operative Facts*

Here the "locus of operative facts" clearly lies within the Eastern District of Virginia. Although the plaintiff is a resident of and her trip originated in the State of New York, the events forming the basis of the action all transpired within the Eastern District of Virginia. Moreover, federal and state authorities conducted an investigation and apprehended Loomis and Borman in Virginia, and the two subsequently were charged and convicted of causing the derailment in Virginia.[3] Finally, as discussed in detail below, a consolidated action asserted against these defendants on behalf of other Colonial passengers currently is pending in the proposed transferee forum. "In sum, the center of gravity of the transaction in issue in this case" lies within the Eastern District of Virginia. *Nieves v. American Airlines*, 700 F.Supp. 769, 772 (S.D.N.Y.1988).

*Related Litigation Pending in Transferee Forum*

One of the factors most strongly supporting transfer of this case is the fact that a consolidated action involving fifty-one separate personal injury claims arising out of the August 12, 1992 derailment currently is pending and scheduled for trial in the District Court for the Eastern District of Virginia. In *Anderson v. National Railroad Passenger Corp.*, 2:92 Civ. 1040 (E.D.Va.1992), fifty-one passengers aboard the Colonial at the time of the derailment are suing defendants Amtrak and CSX, asserting claims nearly, if not totally, identical to those asserted here. Like the allegations levelled by plaintiff Coultman, the plaintiffs in *Anderson* maintain that defendants Amtrak and CSX were negligent in failing to prevent what they view as foreseeable criminal vandalism. Defendants disclaim liability here and in *Anderson* on the basis of Loomis and Borman's intervening criminal acts.

Related litigation pending in the proposed transferee forum is a factor that weighs heavily in favor of transfer. *National Union Fire Ins. v. Turtur*, 743 F.Supp. 260, 263 (S.D.N.Y.1990). The courts of this Circuit favor resolution of related claims in the same forum to promote " 'more efficient conduct of pretrial discovery,' " to save "witnesses time and money in both trial and pretrial proceedings,' " and to avoid " 'duplicative litigation and inconsistent results.' " *Id.* (quoting *Nieves*, 700 F.Supp. at 773). *See also Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). Where two related actions "hinge upon the same factual nuclei," transfer is warranted. *Durham Prod., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F.Supp. 1241, 1244 (S.D.N.Y.1982). *See also Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 165 (S.D.N.Y.1992) (and cases cited therein).

Transfer is particularly appropriate where, as here, "there is a pending lawsuit in the transferee district involving the same facts,

---

**3.** The criminal actions in which Loomis and Borman were charged with and plead guilty to causing the derailment of the Colonial, *United States v. Joseph L. Loomis*, Crim. Action No. 93–99–NN, and *United States v. Raymond Gary Borman, Jr.*, Crim. Action No. 93–63–NN, were pending before Judge Doumar in the District Court for the Eastern District of Virginia.

transactions, or occurrences." *Nieves,* 700 F.Supp. at 773. The present litigation and the *Anderson* action undeniably involve the same issues and facts. Indeed, that the Eastern District of Virginia already has consolidated separate actions commenced by fifty-one different passengers aboard the Colonial at the time of the August 12, 1992 derailment—including actions instituted by two of plaintiff's proposed witnesses—confirms the similarity between issues and facts in this case,[4] which simply asserts one more passenger's personal injury claim arising out of the same incident. Transfer likely will result in consolidation of this action with *Anderson,* which ultimately will expedite resolution of plaintiff's claims and conserve judicial resources in both districts.

### Plaintiff's Choice of Forum

The plaintiff's choice of forum offers little support for maintaining the present action in this District. The courts of this Circuit are loathe to disturb a plaintiff's choice of forum absent a showing that "the balance of convenience and justice weighs heavily in favor of transfer." *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 908 (S.D.N.Y.1983); *Frasca,* 787 F.Supp. at 332 (courts generally accord the plaintiff's initial choice of forum "great weight"). However, "where, as here, the operative facts upon which the litigation is brought bear little material connection to the chosen forum," the venue selected by plaintiff is of less importance. *Nieves,* 700 F.Supp. at 772. *Accord Frasca,* 787 F.Supp. at 332.

As discussed above, the material events precipitating the present action occurred in the Eastern District of Virginia. Indeed, if the defendants were at all negligent in causing or contributing to the derailment of the

Colonial, any such negligence must have occurred, if at all, within the Eastern District of Virginia. Under these circumstances, the plaintiff's choice of forum offers virtually no support for maintaining the action in a forum that bears little, if any, relation to the transaction at issue.

### Practical Considerations and the Interests of Justice

Section 1404(a) expressly directs the transferor court to consider the interests of justice when exercising the discretion to transfer venue. The "interest of justice" factor encompasses both the interest of the particular litigants and the broader public interest served by transfer. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The parties' private interests include the choice of forum and convenience factors discussed above, as well as "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* Considerations of the public interest raise questions regarding "administrative difficulties that follow from court congestion, a local interest in having localized controversies decided at home, and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action." *Id.* at 508–09, 67 S.Ct. at 843.

Viewing the totality of the private and public interests involved here, the Court holds that the balance tips decidedly in favor of transferring this action to the Eastern District of Virginia. The proposed forum is familiar with and has an interest in the events underlying this litigation, and is better suited to apply Virginia substantive law, which governs this action no matter where it is tried.[5] Moreover, the pendency of the

---

4. Rule 42(a) of the Federal Rules of Civil Procedure authorizes consolidation "[w]hen actions involving a common question of law or fact are pending before the court." When two actions allege the same causes of action based on the same events, consolidation properly may be granted. *See, e.g., Cruz v. Robert Abbey, Inc.,* 778 F.Supp. 605, 613 (E.D.N.Y.1991).

5. Following a Section 1404(a) transfer, the choice of law rules of the transferor bind the decision of what state's law to apply in the transferee court. *Van Dusen,* 376 U.S. at 639, 84

S.Ct. at 821. Thus, under New York's choice of law rules, which would apply in this action, *see Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), the substantive law of the state with the paramount interest in the application of its law to the transaction at issue, in this case Virginia, governs whether the action is tried in this forum or in the transferee district. *See American Protein Corp. v. AB Volvo,* 844 F.2d 56, 62 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988).

*Anderson* action in the Eastern District of Virginia and the presence of key witnesses and other evidence in that district argue strongly in favor of transferring the case to that court.

In sum, although the Court is sympathetic to plaintiff's poor health and financial hardship, the Court concludes that the balance of convenience and interests of justice weigh heavily in favor of transferring the action to the Eastern District of Virginia. Neither plaintiff's financial condition, nor the fact that she and her treating physicians are present within this forum, outweighs the pervasive connections between this litigation and the Eastern District of Virginia. In considering carefully all of the surrounding circumstances, this Court believes the interests of justice and the convenience of the parties will be served more effectively and efficiently by granting the requested transfer.

### CONCLUSION

For the reasons set forth above, the defendants' motion to transfer the present action to the District Court for the Eastern District of Virginia hereby is GRANTED.

SO ORDERED.