INDUSTRI & SKIPSBANKEN
A/S, Plaintiff,

v.

Andrew A. LEVY and Ragnvald
Gabrielsen, Defendants.

No. 95 Civ. 0137 (RWS).

United States District Court,
S.D. New York.

June 19, 1995.

Healy & Baillie (Glen T. Oxton, Susan Emma Olick, of counsel), New York City, for plaintiff Industri & Skipsbanken A/S.

Andrew A. Levy, New York City, defendant pro se.

Haight, Gardner, Poor & Havens (Richard A. Menchini, Robert A. O'Hare, of Counsel), New York City, for defendant Ragnvald Gabrielsen.

### OPINION

SWEET, District Judge.

Plaintiff Industri & Skipsbanken A/S ("I & S" or "the Bank") has moved under Rule 56 Fed.R.Civ.P., for summary judgment to enforce the guaranty of the Defendants Andrew A. Levy ("Levy") and Ragnvald Gabrielsen ("Gabrielsen") (collectively, the "Defendants"). Levy has cross moved under Rule 12(b)(7) and Rule 19, Fed.R.Civ.P. to dismiss the complaint for failure to join necessary parties or, in the alternative, under 28 U.S.C. § 1404 to transfer this action to the United States District Court for the Southern District of Texas, Houston Division, or to stay this action pending certain proceedings in the Bankruptcy Court for the Southern District of Texas, Houston Division. Gabrielsen has similarly moved for the transfer of this action to the United District Court for the Southern District of Texas, Houston Division, or for a stay. For the reasons set forth below, the motion of I & S for summary judgment is granted. The motion of Levy to dismiss the complaint is denied, and the motions of Levy and Gabrielsen to transfer the action to the United States District Court for the Southern District of Texas, Houston Division, are granted.

### Prior Proceedings

This action was commenced by I & S by the filing of a complaint on January 9, 1995 seeking to enforce the personal guaranty of Levy and Gabrielsen. I & S moved for summary judgment on its complaint on February 7; Levy cross-moved to dismiss the complaint for failure to join an indispensable party or to transfer the action to the United States District Court for the Southern District of Texas or for a stay pending the resolution of its application in the Bankruptcy Court to lift the stay which barred I & S from foreclosing on its security. Gabrielsen also cross-moved for transfer and a stay. On February 27 Levy filed an answer and cross-claim which might be construed as alleging a fraudulent misrepresentation by I & S and Gabrielsen in connection with the sale of the oil rig which was the asset underlying the transactions between the parties.

The motions were heard on March 22 and considered fully submitted at that time.

### Facts

The facts set forth are in the 3(g) statements of the parties or in affidavits which have not been contravened. I & S is a Norwegian bank and Levy and Gabrielsen are individuals, the former residing in New York and the latter with an office and residence in Houston, Texas, where he lives for a substantial part of each year.

Big Foot Two Ltd. ("Big Foot"), a Liberian corporation, was formed by Levy and

Gabrielsen as principals to purchase Big Foot Two, a jack-up oil drilling rig registered under the laws of the Republic of Vanuatu, since renamed NR Big Foot (the "Oil Rig"). I & S had previously foreclosed on the Oil Rig which had been owned by a defunct Norwegian tax shelter partnership.

On December 28, 1992, I & S and Big Foot Two Ltd. entered into a Loan Agreement (the "Loan Agreement") under which I & S agreed to loan to Big Foot as the Borrower the sum of $1,620,000 to enable Big Foot to purchase the Rig. The terms of the sale of the Oil Rig were 10% down in cash plus 90% of the purchase price paid to I & S in the form of the Loan. Big Foot acquired the Rig and granted a first preferred ship mortgage on it in favor of I & S which was recorded with the Vanuatu Deputy Commissioner of Maritime Affairs on December 29, 1992, in Book PM 13, at Page 88.

Prior to the sale to the Defendants, I & S informed Merchant Partner A/S, the broker in the transaction, that it estimated that it would require between $400,000 and $500,000 to get the Rig ready to drill. Paragraph 3 of the contract of purchase and sale required that Big Foot establish a cash reserve of $500,000 to refurbish the Oil Rig. According to information learned by Levy after the purchase, the Oil Rig had been involved in a severe accident prior to the sale and as a result $2.9 million was required for refurbishing.

On July 8, 1993, I & S and Big Foot entered into an amendment (the "Amendment") to the Loan Agreement under which I & S agreed to defer an installment that was due under the original Loan Agreement and to advance an additional loan of $518,000 to Big Foot (the "Second Loan"). One of the conditions of the Amendment was the issuance by Levy and Gabrielsen and another of their companies, NR Marine, Inc., of a Guaranty and Subordination Agreement under which they would unconditionally jointly and severally guaranty the prompt payment of up to $500,000 principal amount of the Second Loan (the "Guaranty"). The Guaranty was signed by Levy & Gabrielsen as guarantors on July 9, 1993.

The Mortgage on the Rig was amended to reflect the terms of the Amendment (including a redefinition of "Loan" to include the Second Loan) by an Amendment No. 1 thereof, dated July 9, 1993, recorded with the Vanuatu Deputy Commissioner of Maritime Affairs in New York, New York, on July 9, 1993 in Box PM 14, at Page 40.

Among the events of default specified in Section 15 of the Mortgage is the following:

> Failure to pay any installments of principal or interest on the Loan, and such failure shall continue for a period of five (5) days after written notice from the Lender.

According to the terms of the Loan Agreement, Big Foot was to repay the loan by quarterly installments of $60,000 with the balance to be paid by a final installment payment with the full amount of the loan under the Amended Loan Agreement to be repaid on July 12, 1994.

By telefax dated March 16, 1994, I & S advised Big Foot that interest was owing for the period December 29, 1993 to March 29, 1994 in the amount of $25,149.38 and that an installment payment was due of $60,000. I & S, by telefax dated April 5, 1994, similarly advised of the interest owing for the additional amount of the Loan Agreement made by Amendment No. 1. No payments were made.

In April 1994, an officer of I & S in charge of the loan attended a meeting with Levy. Levy represented to the I & S officer that Big Foot would settle the overdue amounts and that the Oil Rig was earning money.

In May I & S proposed a loan restructuring which would require, among other things, that all amounts due and owing under the Loan Agreement would be paid by June 29, 1994. Levy represented that the interest due and owing under the Loan Agreement would be paid by May 13.

Levy, by letter of May 31, 1994, stated that "requirements of overdue vendors, operating costs and repairs has absorbed all available cash" and that Big Foot was embarking on refinancing of the Oil Rig which would take six to eight weeks "at which point we intend to completely repay the [Bank]."

By letter dated June 9, 1994, I & S advised Levy that its board of directors had "decided not to foreclose now but to await the six to eight weeks that you need to accomplish the refinancing" provided that all due interest was paid and asking for various other information. Levy responded that Big Foot was "unable to pay the interest due immediately but we should be able to pay it in a few weeks" and that he would provide the information and documents requested.

By letter dated June 24, 1994, Levy stated that refinancing negotiations would take at least another two or three months and proposed terms for payment of the overdue amounts of $560,000 by way of, among other things, a second mortgage. By letter dated June 29, 1994, Big Foot was advised of the interest installment amounts due and owing and documents and information were again requested.

By letter dated July 6, 1994, I & S advised Levy of the terms upon which I & S would agree to a second mortgage on the Oil Rig. Levy, by letter dated July 8, 1994, provided the terms under which I & S had agreed to a second mortgage to Messrs. Healy & Bailie, counsel for I & S, to permit counsel to prepare the second mortgage.

By letter dated July 14, 1994, I & S advised Big Foot of the amounts due and owing under the Loan Agreement and by letter dated July 25, 1994 I & S requested Levy to advise the amount that Big Foot would be paid by Gabriel Invest, Inc. Levy stated that Gabriel Invest Ltd. had proposed a $1 million loan to N.R. Marine, Inc. of which $500,000 would be used to pay the Loan Agreement, which Loan Agreement was, however, delayed while N.R. Marine, Inc. negotiated the sale of "all of its rigs." Accordingly, Levy asked I & S "to be patient for several days."

By letter dated August 10, 1994, I & S advised Levy that Big Foot was in material default of the Loan agreement and that I & S would "take the necessary steps to commence a foreclosure procedure" against the Oil Rig. I & S was "willing to await a full settlement of the loans, interest and costs until September 30, 1994 by which date a voluntary sale of N.R. Big Foot must have taken place" but without any requirement that I & S forebear foreclosing should, among other things, another creditor seize the Oil Rig.

Levy telefaxed a signed copy of the I & S letter dated August 10, 1994, stating in his handwriting:

Accepted: Big Foot Two Ltd. by [A. Levy] under power of attorney.

On August 24, 1994, Big Foot, N.R. Marine, Inc. and four affiliated corporations filed separate petitions for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (94–45723, –40, –44, –47, –48, –49 –HI–11) (the "Bankruptcy Proceeding").

I & S moved on November 3, 1994 in the Bankruptcy Proceeding to lift the automatic stay to permit foreclosure and also moved on December 9, 1994 for the appointment of a trustee.

On November 15, 1994 the Honorable Manuel Leal, Bankruptcy Judge for the Southern District of Texas, Houston Division, before whom the Bankruptcy Proceeding was being conducted, ordered the parties to mediate their dispute, which mediation is still ongoing.

Big Foot agreed with I & S to hire two offshore brokerage firms, R.S. Platou and Bassoe Offshore, to sell the Oil Rig and the retention of these two brokerage firms has been approved by the Bankruptcy Court in Houston, Texas.

On December 6, 1994, written demand was made upon Levy and Gabrielsen for payment of $500,000 under the Guaranty, but payment has not been made.

### Discussion

### The Standards for Summary Judgment

■ A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of mate-

rial fact exists. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Pittston Warehouse Corp. v. American Motorists Ins. Co.,* 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd,* 954 F.2d 62 (2d Cir.1992).

■ The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady,* 863 F.2d at 210; *see also Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983); *Swan Brewery Co. v. United States Trust Co.,* 832 F.Supp. 714, 717 (S.D.N.Y.1993).

■ The remedy of summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

According to I & S, neither Gabrielsen nor Levy has raised any genuine issue as to any material fact with respect to its claim for performance of the Guaranty. Because no such factual issues exist for the reasons described below, summary judgment is appropriate.

### The Guaranty is Unconditional

■ According to the Defendants, there are factual issues as to whether certain purported conditions have been met, thereby raising a question as to the triggering of the obligations under the Guaranty and consequently constituting a bar to the granting of summary judgment. Specifically, Gabrielsen contends that I & S did not exercise due diligence in protecting the value of the collat-

eral by failing to exercise its right to proceed against it under the Preferred Ship Mortgage, thereby breaching a duty to him to protect the collateral, which is implicit in Paragraph 15 of the Guaranty, and established under Article 9 of the New York Uniform Commercial Code.

Article 9 of the New York Uniform Commercial Code provides, in relevant part:

> **Section 9–104. Transactions Excluded From Article.**
>
> This Article does not apply
>
> (a) to a security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property; ...

*Id.* The Official Uniform Comment to this section states:

> Where a federal statute regulates the incidents of security interests in particular types of property, those security interests are of course governed by the federal statute and excluded from this Article. The Ship Mortgage Act, 1920, is an example of such a federal act.

*Id.*

Jurisdiction for the instant action is based in federal law, namely, the Ship Mortgage Act. The Preferred Ship Mortgage on the Oil Rig which was given by Big Foot is without question a security interest covered by the Ship Mortgage Act and by virtue of Amendment No. 1 to the Loan Agreement the Guaranty given by the third parties to the mortgage, Levy and Gabrielsen, is "a claim for outstanding indebtedness secured by the mortgaged vessel ... against ... the guarantor", 46 U.S.C. § 31325(b).

However, the Guaranty by its terms states:

> 12. The Guarantors agree that this agreement and the rights and obligations of the Lender and the Guarantors hereunder shall in all respects be governed by, and construed in accordance with the laws of the State of New York. The Guarantors agree that any action or proceeding arising out of or relating to this Agreement may be commenced ... in the United States

District Court for the Southern District of New York ...

Based upon this language in the Guaranty, Levy also seeks to impose two preconditions upon the exercise of its rights by I & S, the first being a requirement to foreclose prior to the enforcement of the Guaranty and the second being an obligation to preserve the security, an obligation which Levy maintains that I & S has failed to perform and therefore is barred from proceeding on the Guaranty.

Although Levy advances the proposition that I & S under New York law must elect between foreclosure and enforcement of the Guaranty, his citations relate to real property foreclosures and to a deficiency action which requires the sale of the collateral to determine the amount of the deficiency, neither of which are remedies sought here by I & S. No authorities relevant to the present situation are set forth.

Assuming the applicability of New York authorities as a consequence of the choice of law provision referred to above, it may well be that:

> Under both the common law and the Uniform Commercial Code, a secured party has a duty to exercise reasonable care in the custody and preservation of collateral in its possession. The obligation remains the same regardless of whether the secured party came into possession of the property before or after the debtor's default.

*In re Bud–Lee Ski Ctr.*, 116 A.D.2d 715, 716, 497 N.Y.S.2d 768, 769 (2d Dept.1986).

Consistent with this, the Defendants contend that the obligation of the secured party should not change merely because the secured party is not in possession of the security when it has the ability to protect the value of the security which forms the basis of the parties' agreement. *Cf.* N.Y. U.C.C. § 9–207(1); *Federal Deposit Ins. Corp. v. Frank L. Marino Corp.*, 74 A.D.2d 620, 425 N.Y.S.2d 34 (2d Dept.1980) (holding negligent failure to liquidate collateral which substantially declines in value is a breach of secured party's duty to use reasonable care in the custody and preservation of collateral).

Even assuming the accuracy of the factual assertion of the Defendants that the Oil Rig declined in value after the event of default on the Guaranty, there is no factual dispute as to the conduct of the Defendants during that period and their prolonged effort to keep I & S from exercising its foreclosure rights, an effort which it is presumed continues in the Bankruptcy Proceeding. Not only did the Defendants waive any right they may have had to require I & S to protect the security by foreclosure, they actively sought to prevent the I & S from acquiring the right to control the security. Under these circumstances no factual issue is presented with respect to the duty of I & S or its failure to perform that duty.

Since there are no preconditions to the exercise of its rights under the Guaranty and no factual issue has been raised to defeat the I & S motion for summary judgment with respect to default or liability, I & S is entitled to recover on the Guaranty.

**Transfer to Texas is Appropriate**

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In other actions on personal guarantees, the Court has considered the following factors in deciding a motion under § 1404(a):

> (1) inconvenience of the party; (2) convenience of fact witnesses; (3) availability of process to compel reluctant witnesses; (4) the cost of obtaining the presence of witnesses; (5) access to proof; (6) calendar congestion; (7) where the relevant events took place; and (8) the interests of justice in general.

*Coface v. Optique Du Monde, Ltd.*, 521 F.Supp. 500, 507 (S.D.N.Y.1980) (*quoting Car–Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 85 (N.D.N.Y.1977)).

In *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462 (S.D.N.Y.1983), an action to recover on a Conditional Sales Note and a Guaranty, which contained a New York forum selection clause, the requested transfer to California was made.

Regarding the forum selection clause of the Guaranty, *Credit Alliance* held that "[a]lthough this language *empowers* the New York courts to adjudicate [a] matter, it does not indicate that New York is the *exclusive* or the only appropriate forum where the case may be heard." *Id.* at 1465 (emphasis in original). Further, the Court stated that with such a clause the defendant "declared nothing more than her consent to the venue and jurisdiction of a court which might otherwise not exist—thus retaining her right to assert her own convenience as a basis for transfer." *Id.*

 The Defendants with the burden of proof on the issue of transfer must establish that this action is one that might have been brought initially in the Southern District of Texas, as required by 28 U.S.C. § 1404(a). Pursuant to the applicable venue provision, 28 U.S.C. § 1391(b), venue is proper in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. Inasmuch as all defendants do not reside in the same state, the first venue alternative does not apply. However, both the Southern District of New York and the Southern District of Texas are proper venues pursuant to subdivisions (2) and (3) of § 1391(b). Thus, as a matter of venue the case may properly be transferred to the Southern District of Texas.

 The existence of the Bankruptcy Proceeding in Houston weighs in favor of a transfer there. In *National Union Fire Ins. Co. v. Turtur,* 743 F.Supp. 260 (S.D.N.Y. 1990) a surety commenced two actions in this Court for reimbursement under terms of an indemnity agreement for payment of capital contributions to a limited partnership and for reimbursement as subrogee on defaulted notes of the limited partnership. A related action was commenced in the Texas court and was removed to the United States District Court for the Southern District of Texas. The plaintiffs in that action, defendants in the New York action, moved to transfer the New York actions to Texas. *Id.* at 262. In granting the motion to transfer, this Court stated:

> The presence of related litigation in the transferee forum weighs heavily in favor of transfer, since litigation of related claims in the same tribunal results in "more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest."

*Id.* at 263 (*quoting Nieves v. American Airlines,* 700 F.Supp. 769, 773 (S.D.N.Y.1988)). " '[A]s a general proposition, cases should be transferred to the district where related actions are pending.' " *Id.* The Court stressed that procedural duplication and the inconvenience of witnesses should be avoided. *Id.* at 264. The plaintiff should prepare to litigate wherever it transacts business and should " 'expect that the use of a permissive forum selection clause may result in distant litigation where—as here—the opposing parties would be greatly inconvenienced by the litigation in New York.' " *National Union Fire Ins. Co. v. Frasch,* 751 F.Supp. 1075 (S.D.N.Y.1990) (*quoting Leasing Serv. Corp. v. Rigdon,* No. 85 Civ. 1717, 1987 WL 4713 (S.D.N.Y. January 15, 1987)).

Here, I & S has no ties to any particular forum and has relied appropriately on the forum selection clause in the Guaranty. Gabrielsen maintains a residence and office in Houston and Levy has moved to have this action transferred there. Under the terms of the Guaranty at issue, if the Defendants make any payment under the Guaranty, I & S must assign to the Defendants that portion of the ship mortgage security relating to the indebtedness paid by them to I & S. There is, therefore, a threat of duplicative litigation affecting the Bankruptcy Proceeding. In his Answer and Crossclaim, Levy has asserted that I & S and Gabrielsen withheld information concerning the Oil Rig which is the largest asset of the Big Foot bankruptcy estate. The majority of the fact witnesses are not within the control of the parties but

are available through subpoena in Texas. Having all relevant parties litigating these matters in the same court, or at the very least, the same district, is the most efficient and convenient course to pursue and fulfills the purpose of § 1404(a).

■ The most compelling reason to transfer this action to the Southern District of Texas is for a subsequent transfer by the district court under 28 U.S.C. § 157(a) to the Bankruptcy Court. This is a "related proceeding" within the meaning of 28 U.S.C. § 157(a), requiring that the case be transferred to the Bankruptcy Court. It has been held that an action on a personal guaranty for the debts of a debtor in bankruptcy is within the jurisdiction of the Bankruptcy Court. *See In re Brothers Coal Co.,* 6 B.R. 567, 571 (Bankr.W.D.Va.1980) ("Indeed the possible elimination of duplication of effort and multiplicity of litigation would be better served by the retention of this action in this Court."); *see also In re Lucasa Int'l Ltd.,* 6 B.R. 717 (Bankr.S.D.N.Y.1980) (third party action involving liability on guaranty within bankruptcy jurisdiction).

> It has been held that when the: commencement or continuation of a suit against a principal officer or employee of a debtor on the guaranty of a debt owed principally or jointly by the debtor would have a significant impact on the debtor's chances to reorganize by, *inter alia,* depriving the debtor of the employee's services, depriving the debtor of the employee's loyalty or being undertaken for the purposes of harassment to attempt to obtain favored treatment in a plan of reorganization, that a sufficient relation to the bankruptcy case would exist to secure jurisdiction under 28 U.S.C. § 1334(b).

*In re Rustic Mfg. Inc.,* 55 B.R. 25 (Bankr. W.D.Wis.1985).

*In re Rustic Mfg. Inc.* dealt with the issuance of an injunction by the bankruptcy court against the enforcement of a Guaranty, and here the Defendants obviously sought the transfer in the alternative to the disposition of the I & S motion for the same purpose, *i.e.,* to prevent a determination of the individuals liability on the Guaranty. However, in view of the briefing and submission of the issue of the liability of the individual guarantors and the findings and conclusions reached in that regard as set forth above, no purpose would be served in deferring a determination. The effect and consequence of that determination and its enforcement will obviously be a matter for the Bankruptcy Court to resolve.

By virtue of the transfer and the disposition of the summary judgment motion, all the parties will be before the Bankruptcy Court with the rights of Bank with respect to the individuals having been defined. The interests of justice will thus be best served.

*Conclusion*

The motion of I & S for summary judgment is granted and the motions of Levy and Gabrielsen to dismiss the complaint are denied. Their motions for transfer of the action to the District Court for the Southern District of Texas, Houston Division, for reference to the Bankruptcy Court is granted. Submit judgment on notice.

It is so ordered.