**MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff,**

v.

**PALMER CORPORATION and Palmer Video Corporation, Defendants.**

**No. 91 Civ. 5347 (CSH).**

United States District Court, S.D. New York.

July 13, 1992.

Robert M. Rosenblith, New York City (Manuel W. Gottlieb and Kevin J. Flynn, of counsel), for plaintiff Mfrs. Hanover Trust Co.

Richard Stelnik, New York City (Samuel Friedman, of counsel), for defendants Palmer Corp. and Palmer Video Corp.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court on defendants' motion to transfer this action to the District of New Jersey at Newark. Defendants move, in the alternative, to stay this

action pending determination of a related action in that court.

For the reasons stated below, the motion to transfer is granted.

## BACKGROUND

Plaintiff Manufacturers Hanover Trust Company ("MHT") is a New York banking corporation with headquarters in New York. Plaintiff's Amended Complaint ("Amended Complaint") at ¶ 1. Defendants Palmer Corporation and Palmer Video Corporation ("Palmer") ("the Palmer Corporations") are New Jersey corporations engaged in the sale, rental and distribution of video cassettes. *Id.* at ¶¶ 2–3; Civil Action Complaint No. 91–5964, Superior Court of New Jersey ("New Jersey Complaint") at 1, Reply Affidavit of Paul M. Grassi ("Grassi Reply Aff."), Exh. A.

On August 6, 1991, MHT filed this diversity action against Palmer for defaulting on three promissory notes dated December 17, 1990; January 2, 1991; and March 15, 1991. MHT seeks the amount of the loans, $600,000, plus interest. *See* Amended Complaint.

On August 9, 1991, MHT served Palmer with the Complaint and filed and served an Amended Complaint on August 29, 1991. The defendants, however, failed to answer within the obligatory 20 days. MHT sought a default judgment and, on October 21, 1991, the Clerk of the Court, James M. Parkison, noted defendants' default.

Defendants then moved for an order enlarging their time to answer. In a Memorandum Opinion and Order dated November 27, 1991, this Court granted the motion.[1] Palmer answered the Amended Complaint on December 19, 1991. On January 24, 1992, Palmer moved to transfer this action to the District of New Jersey at Newark pursuant to 28 U.S.C. § 1404(a).

While this case has been progressing in the Southern District, the parties have been engaged in another lawsuit in New Jersey. On July 31, 1991, six days before MHT brought this suit, Palmer Corporation commenced a lender liability action in New Jersey Superior Court against MHT, alleging breach of a $6.8 million loan commitment agreement.[2] Palmer's complaint states that MHT contracted—in a loan commitment agreement dated September 28, 1990 and signed by both parties—to lend $1.8 million to Palmer to refinance one of Palmer's debts, and $5 million to fund new video stores (at $200,000 per store). New Jersey Complaint at 2. In return for this commitment, Palmer paid $10,000 to MHT. *Id.*

MHT allegedly reneged on this agreement. While acknowledging receipt of $600,000 from MHT to fund three new stores, Palmer asserts that this was an advance on the $6.8 million loan package that the parties never closed but that MHT promised in the September 28, 1990 agreement and in other oral statements. *Id.* at 4; Answer to Amended Complaint at ¶ 44.

On August 2, 1991, MHT received Palmer's complaint by facsimile transmission. Grassi Reply Aff., Exh. B at ¶ 12. On August 22, 1991, sixteen days after MHT filed suit in the Southern District, MHT removed Palmer's action to the District of New Jersey at Newark. Defendant's Memorandum in Opposition to Transfer ("MHT Brief") at 4 n. 1; Grassi Reply Aff., Exh. B.

## DISCUSSION

■ Palmer moves to transfer this action to the District of New Jersey at Newark, pursuant to 28 U.S.C. § 1404(a), which provides:

For the convenience of parties and witnesses, in the interest of justice, a dis-

---

**1.** As the prior opinion discussed, the Clerk's notation of default was not the equivalent of either an entry of default or a judgment by default. *See* Fed.R.Civ.P. 55; Local Rule 10. Accordingly, the Court did not consider whether to set aside the default; the only question was whether to allow defendants more time to answer.

**2.** Palmer Video Corporation was not a plaintiff in the New Jersey action. In referring to the New Jersey action, "Palmer" means the Palmer Corporation. The distinction does not affect the analysis.

trict court may transfer any civil action to any other district or division where it might have been brought.

A motion to transfer rests in the sound discretion of the Court, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988), and "the moving party bears the burden of showing that a change of venue is appropriate...." *Generale Bank, New York Branch v. Wassel*, 779 F.Supp. 310, 313 (S.D.N.Y.1991) (citing *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989)). This burden is an onerous one: "the rule in this Circuit is that plaintiff's choice of forum will not be disturbed unless the movant shows that the balance of convenience and justice weighs heavily in favor of transfer." *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 908 (S.D.N.Y.1983) (citations omitted). *See also Don King Productions, Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y. 1990) ("The moving party must make a clear showing to justify a change of venue.") (citations omitted); *Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1989) ("The party requesting transfer 'bears the burden of establishing, by a clear and convincing showing, the propriety of transfer.'") (citations omitted); *U.S. Barite Corp. v. M.V. Haris*, 534 F.Supp. 328, 330–31 (S.D.N.Y.1982) ("A plaintiff's choice of forum is entitled to great weight and will not be disturbed except upon a clear-cut showing by defendant that convenience and justice for all parties demands that the litigation proceed elsewhere.") (citations omitted).

The threshold question in a transfer motion is whether the action could have been brought in the district to which transfer is proposed. 28 U.S.C. § 1404(a); *Arrow*, 724 F.Supp. at 265–66. Since the defendants in the case at bar are corporations with headquarters in New Jersey, this action could clearly have been brought in the District of New Jersey. 28 U.S.C. § 1391(a).

Once that threshold is crossed, courts considering a motion to transfer weigh several factors:

(1) [T]he convenience of the parties and witnesses (and the availability of process to compel attendance of unwilling witnesses); (2) the relative ease of access to sources of proof, and other practical problems that make trial of a case easy, expeditious, and inexpensive; and (3) the interests of justice.

*Savin v. CSX Corp.*, 657 F.Supp. 1210, 1213 (S.D.N.Y.1987) (quoting *Somerville*, 576 F.Supp. at 906).

### Convenience of the Parties and Witnesses

Palmer argues that the balance of convenience favors transfer to New Jersey. In support of this argument, the defendants state that the Palmer corporations have their offices in New Jersey; that two of the witnesses who will testify, Peter Balner and Paul Grassi, reside and work in New Jersey; and that MHT has offices in New Jersey. Defendants' Brief In Support of Motion to Transfer ("Palmer Brief") at 2–3.

MHT responds by stating that its corporate offices are located in the Southern District; that the two MHT employees who principally dealt with the defendants, Anthony Morisi and Stephen Sipola, both live on Long Island and work in either Queens or Brooklyn; and that a potential non-party witness and an accountant for Palmer, Louis Biscotti, lives and works in New York. MHT Brief at 12.

Palmer's argument fails on two counts. First, the defendants have not shown that the Southern District is more inconvenient for them than the District of New Jersey would be for MHT. Indeed, they have done little more than state their personal reasons for preferring the District of New Jersey. Such a showing is inadequate under the laws governing transfer. As Judge Weinfeld held in a similar case:

[T]he Court further finds that the inconvenience to the parties and witnesses is evenly balanced. No matter where the trial is held, one party will be inconvenienced. Where the factors involved in the Court's decision whether or not to transfer are in equipose, the plaintiff is entitled to his choice of forum.

*Teachers Insurance & Annuity Association of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y.1984) (footnote omitted). *See also Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F.Supp. 978, 984 (S.D.N.Y.1985) ("A § 1404(a) motion should not be granted if all transfer would accomplish is to shift the inconveniences from one party to the other.") (citing *Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F.Supp. 563, 566 (S.D.N.Y.1979)).

 Even if Palmer could demonstrate that more witnesses and parties lived in New Jersey, the argument would fail. Absent extraordinary circumstances, convenience simply cannot be considered a significant issue when the districts are so close to one another. As the court stated in *Moyglare Stud Farm, Ltd. v. Due Process Stable, Inc.*, 562 F.Supp. 289, 292 (S.D.N.Y. 1983):

> A request to transfer strikes an extremely hollow note in this case since the proposed transferee courthouse in Newark is located less than 20 miles from this courthouse. Travel convenience is, in this instance, a minimal consideration.

Therefore, this Court concludes that the convenience of the parties and witnesses would not be furthered by transfer.

### Ease of Access to Proof

Palmer states that because the promissory notes were signed in New Jersey and the loan meetings were held there, the parties' access to proof militates in favor of transfer. MHT counters by asserting that its files—which it claims are likely to be more voluminous than Palmer's—are in New York, and that the only anticipated non-party witness maintains offices and files in New York. MHT Brief at 13–14.

As in their argument regarding convenience, the defendants have done little more than articulate their own preference. They have failed to show that "it is somehow a greater imposition for [Palmer] to bring [their] proof to New York than for [MHT] to bring its proof to [New Jersey]." *Stinnes*, 604 F.Supp. at 983. Accordingly, on the grounds of easier access to proof, I

do not find the scale tipped in the direction of either forum.

### Practical Issues and the Interests of Justice

The Palmer corporations also argue that the pendency of their suit against MHT in New Jersey favors transfer. Their argument is based on interests of judicial economy. As explained by the Second Circuit:

> There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.

*Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). Many cases have relied on this policy to support transfer. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 743 F.Supp. 260, 263 (S.D.N.Y.1990) ("The presence of related litigation in the transferee forum weighs heavily in favor of transfer...."); *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y.1988) ("Transfer is particularly appropriate where there is a pending lawsuit in the transferee district involving the same facts, transactions, or occurrences.") (citations omitted) (footnote omitted); *Savin*, 657 F.Supp. at 1214; *Berg v. First American Bankshares, Inc.*, 576 F.Supp. 1239, 1243 (S.D.N.Y.1983); *Somerville*, 576 F.Supp. at 908 ("The existence of a related action in the transferee district is a strong factor to be weighed in the interest of judicial economy.") (citations omitted); *Durham Productions, Inc. v. Sterling Film Portfolio, Ltd.*, 537 F.Supp. 1241, 1244 (S.D.N.Y. 1982); *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 75 (S.D.N.Y.1978); *see also Securities and Exchange Commission v. First National Finance Corp.*, 392 F.Supp. 239, 241 (N.D.Ill.1975) ("[A]s a general proposition, cases should be transferred to the district where related actions are pending.")

■ While it may be clear that one forum is better than two, which of the two fora is better follows from another principle: the "first-filed rule." "The well-settled principle rule in this Circuit [is] that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or special circumstances . . . giving priority to the second." *First City National Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989) (citing and quoting prior Circuit decisions). However, the first filed rule "is not to be applied in a mechanical way regardless of other considerations." *National Patent Development Corp. v. American Hospital Supply Corp.*, 616 F.Supp. 114, 118 (S.D.N.Y.1984) (Weinfeld, J.) (quoting *Hammett v. Warner Brothers Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir. 1949)). Applying the first-filed rule to the case at bar is complicated by several factors.

■ The first complication arises out of the sequence of events involved in the filing of the two actions. The Palmer corporation filed its complaint against MHT on July 31, 1991, six days before MHT filed its complaint. That first action, however, was filed in New Jersey *state* court. It was not removed to the federal court in New Jersey until August 22, 1991—16 days after MHT filed its action in this Court. Accordingly, I must determine whether the state filing date or the date of removal is the date to look to under the first-filed rule.[3]

My research has not uncovered a Second Circuit case that directly addresses this issue. Outside this Circuit, however, there is ample authority for the proposition that the state court filing date is the relevant benchmark. *Igloo Products Corp. v. The Mounties, Inc.*, 735 F.Supp. 214, 217 (S.D.Tex.1990); *Specialty Insurance Agency, Inc. v. Walter Kave Associates, Inc.*, CIV No. 89–1708, 1989 WL 65618 at *5 (D.N.J. June 7, 1989); *Owens v. Ohio Cent. R. Co.*, 20 F. 10 (C.C.W.Va.1884);

*contra Pesco Distribution Center, Inc. v. Del-Rain Corp.*, Civ. A. No. 91–1150, 1991 WL 125177 at *2 (E.D.Pa. June 28, 1991); *see also Staple v. United States*, 740 F.2d 766, 769–70 (9th Cir.1984) (looking to the original date of filing in state court for purposes of the running of a statute of limitations). The principles underlying removal also weigh in favor of the state filing date. *See* 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3738 at 556–57 (1985) ("After removal, a federal court acquires full and exclusive jurisdiction over the litigation. The removed case proceeds according to the Federal Rules of Civil Procedure and is treated *as though it had been commenced originally in the federal court.*") (footnotes omitted) (emphasis added). I therefore find that July 31, 1991 is the date Palmer commenced the New Jersey action and treat that as the first case to be filed.

■ The second factor complicating the first-filed rule in this case concerns the nature of the two actions. While Palmer may have filed its action first, transfer is not appropriate on that basis if the actions are unrelated. *See, e.g, General Bank, New York Branch v. Wassel*, 779 F.Supp. 310, 313 (S.D.N.Y.1991) (denying transfer where parties were different and actions were distinct). Palmer claims the two actions are related; MHT states otherwise.

■ MHT's argument for unrelatedness rests on a narrow view of MHT's $600,000 loan. MHT urges the Court to focus on this transaction to the exclusion of other negotiations and alleged agreements. Palmer insists that it must be seen in the context of a larger, more elaborate loan transaction. Thus, while MHT characterizes its action as a discrete matter involving a straightforward default on a $600,000 loan, Palmer describes that transaction as an advance on the $6.8 million loan package that MHT promised but never delivered.

---

**3.** MHT claims that it was not served until September. It has admitted, however, that New Jersey counsel received a facsimile transmission of the complaint on August 2, 1991, and MHT actually removed the action on August 22, 1991.

In any case, as between the filing date and the date of service, the controlling event is the filing date. *See, e.g., Berisford Capital Corp. v. Central States, Southeast and Southwest Areas Pension Fund*, 677 F.Supp. 220, 222 n. 1 (S.D.N.Y.1988).

I decline to view the events through the narrow lens offered by MHT. The interests of justice require that the cases be related, not identical. Both actions arose from loan negotiations among the parties, and both involve the same witnesses and parties. Furthermore, in their answer to MHT's amended complaint, the Palmer corporations asserted the same claims of fraudulent breach that are pending in the New Jersey action. Courts should avoid duplicative litigation whenever possible, and obsessing over slight differences between actions does not promote judicial economy. I am not prepared to consider the dispute at bar in the skewed way I must in order to hold in MHT's favor.

Consistent with the first-filed rule, then, the appropriate course would be to transfer this action in the interests of justice. MHT argues, however, that "special circumstances" exist which preclude application of the first-filed rule. Such circumstances exist, according to MHT, because of a clause in the three promissory notes executed by Palmer. That clause states: "each maker or indorser in any litigation ... in which [MHT] and any of them shall be adverse parties, waive trial by jury, and each maker and indorser waives the rights to interpose any set-off or counterclaim of any nature or description." Amended Complaint, Exh. A, B. MHT states that New York courts have upheld such waiver provisions and that if this action were to be transferred and consolidated with the New Jersey action, Palmer "will have managed to circumvent clear New York law prohibiting precisely. the result they are attempting to accomplish, the assertion in the same action of a set-off or counterclaim adverse to MHT's suit on the notes, notwithstanding the contractual waiver provision to the contrary." MHT Brief at 7–8.

 There are two flaws in MHT's argument. The first concerns the extent of the waiver provision. While the New York

courts have indeed upheld such loan provisions, *see, e.g., Silbert v. Silbert,* 85 A.D.2d 661, 445 N.Y.S.2d 215 (1981); *Federal Deposit Insurance Corp. v. Frank L. Marino Corp.,* 74 A.D.2d 620, 425 N.Y.S.2d 34 (1980), these waivers "will not be enforced so as to bar a viable setoff or counterclaim sounding in fraud." *Federal Deposit Insurance Corp.,* 74 A.D.2d 620, 425 N.Y.S.2d at 35 (citing *Sterling Nat. Bank & Trust Co. of New York v. Giannetti,* 53 A.D.2d 533, 384 N.Y.S.2d 176 (1976)

 While I intimate no view on whether Palmer's allegations are meritorious, Palmer does sound a claim in fraud. Palmer has asserted that MHT misrepresented the nature of its commitment to Palmer, leading Palmer into a near desperate situation; at the time the notes were signed, Palmer had "nowhere else to go for badly needed funds" because it had ceased negotiations with other banks after the signing of the September 28, 1990 contract for $6.8 million. Grassi Reply Aff. at ¶ 13. MHT allegedly pulled the rug out from under Palmer by failing to close the larger loan, thereby inducing Palmer to sign the notes when Palmer "had no choice but to accept the Bank's offer." *Id.* at ¶ 12. If true, these circumstances would invalidate the waiver. *See National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977) (where owner of construction company "did not have any choice but to accept the ... contract as written if he was to get badly needed funds," there was a "gross inequality of bargaining power" that voided the waiver provision) (citing *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). Palmer also claims that MHT committed fraud by representing that the $600,000 loan would be "rolled over" into the loan package under the original agreement.[4] *Id.* at ¶ 11; Reply Affidavit of Peter Balner at ¶ 3.

---

4. As for MHT's argument that Palmer cannot allege oral misrepresentations, the parol evidence rule does not bar such evidence where a party seeks to rescind a contract on the ground of duress or fraud. *See, e.g., Hobart v. Schuler,* 55 N.Y.2d 1023, 449 N.Y.S.2d 479, 480, 434

N.E.2d 715, 716 (1982) (citing *Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 717–19, 143 N.E.2d 906, 908–09 (1957)). As discussed *infra,* the New Jersey court can determine how the rule applies to this action.

■ Taken together, then, Palmer alleges circumstances that would vitiate the clause relied on by MHT. MHT therefore overestimates its case when it asserts that New York law precludes a counterclaim.[5]

But MHT also underestimates its case when it describes the dismal fate awaiting it if transfer is granted. Contrary to MHT's professed fears, the District of New Jersey is free to find that Palmer's fraud claims are incredible and, therefore, that the waiver is valid. The New Jersey court may also elect not to consolidate the two actions, instead taking them as related cases and addressing each separately. True, consolidation of the two actions and invalidation of the waiver may ensue; but transfer does not automatically trigger either.

## CONCLUSION

For the reasons stated above, the defendants' motion to transfer this action to the District of New Jersey at Newark is granted. Because of this Court's holding, I need not address the application for a stay.

The Clerk of the Court is directed to transfer this action forthwith.

It is SO ORDERED.

---

**5.** Because the promissory notes require that New York law govern, MHT states that this Court's greater familiarity with New York law weighs against transfer. However, given its close proximity, I do not accept the suggestion that the District Court of New Jersey is not familiar—indeed, very familiar—with the law of New York. Moreover, "when there is no contention that complex questions of foreign law are involved, 'the fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer.'" *Dow Jones & Company, Inc. v. Board of Trade of the City of Chicago*, 539 F.Supp. 190, 192 (S.D.N.Y.1982) (quoting *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980)).