**DRUGSTORE–DIRECT, INC.**

v.

**THE CARTIER DIVISION OF RICHEMONT NORTH AMERICA, INC. and Cartier International, B.V.**

No. Civ.A. 04–3865.

United States District Court, E.D. Pennsylvania.

Dec. 27, 2004.

Timothy D. Pecsenye, Dennis P. McCooe, Jennifer L. Miller, Blank Rome LLP, Philadelphia, PA, for Plaintiff.

Scott L. Vernick, David H. Colvin, Fox Rothschild LLP, Philadelphia, PA, Milton Springut, Tal S. Benschar, Kalow & Springut, LLP, New York City, for Defendants.

### *MEMORANDUM AND ORDER*

KAUFFMAN, District Judge.

Plaintiff Drugstore–Direct, Inc. ("DSD") brings this action for declaratory judgment of patent non-infringement, patent invalidity, and trademark non-infringement against Defendants the Cartier Division of Richemont North America, Inc. and Cartier International, B.V. (collectively "Cartier"). Now before the Court is Cartier's Motion to Dismiss. For the reasons stated below, the Court will grant the Motion.

### I.  Factual Background

The Complaint alleges: DSD is a wholesaler of watches. Cartier manufacturers and sells fine watches and jewelry. In early July 2004, an employee of Cartier purchased several watches at a Hudson News ("Hudson") newsstand, located in Penn Station, New York. Defendants' Motion to Dismiss at 3. Hudson is a customer of DSD. Complaint, ¶ 8. Cartier claims that these watches were exact copies of well-known Cartier watch designs and that Hudson was offering for sale watches which "are confusingly similar to one or more of the Cartier Trade Dress and violate Cartier's design patents and infringe [on] its federal registrations for these products." *See* Complaint, Exhibit 1. Cartier sent a cease-and-desist letter to Hudson demanding that it immediately discontinue the advertising, promotion and sale of any merchandise incorporating the Cartier Trade Dress, provide a representation that any relevant merchandise has been withdrawn from sale, provide an accurate inventory of relevant merchandise and identify its suppliers. *Id.* In its response, Hudson indicated that it would undertake to withdraw from sale of the allegedly infringing watches and identified DSD as its supplier. Complaint, Exhibit 2.

Cartier then sent DSD a cease and desist letter that was identical in relevant part to the letter sent to Hudson. Complaint ¶ 14 and Exhibit 3. Cartier's letter stated that, unless the requested informa-

tion was received by the close of business on July 19, 2004, "more formal proceedings" would be commenced. Complaint, Exhibit 3. DSD responded before that date, indicating it would investigate Cartier's claims, and pointed out the differences between its watches and Cartier's. Complaint, Exhibit 4. DSD's letter also stated that it would voluntarily cease further sales of the watches in question, and requested that "Cartier forebear from commencing formal proceedings in connection with this dispute" pending DSD's investigation. *Id.*

On July 21, 2004, Cartier responded to DSD's letter, stating that Cartier had not received information as to the quantity of inventory in DSD's possession, nor concerning the identity of its supplier or the other documents requested. Complaint, Exhibit 5. Cartier concluded that it did "not see any way of amicably resolving [the] matter without such information." *Id.* Cartier's counsel sent another letter to DSD, stating that, in the absence of a response to the July 21, 2004 letter, they had been "instructed to proceed with more final proceedings." Complaint ¶ 21 and Cartier's Motion to Dismiss, Exhibit G. On the same day, DSD responded identifying three suppliers for the allegedly infringing watches, confirming that they would cease sales of the watches in question, noting that the investigation was not yet complete and concluding that DSD was confident that a mutually satisfactory resolution could be reached. Cartier's Motion to Dismiss, Exhibit H.

On August 4, 2004, Cartier requested the production of documents relating to the purchases of watches from the sources identified in DSD's earlier letter. Complaint, Exhibit 6. On the same date, Hudson sent a letter attaching an inventory of withdrawn items and claiming an inability to provide specific documents Cartier had requested. Defendant's Motion to Dismiss, Exhibit K. On August 10, 2004, Cartier informed Hudson that despite its claims of having withdrawn from the sale of infringing watches, such watches were still being offered for sale at Hudson newsstands. Complaint, Exhibit 7. In this letter, Cartier demanded that Hudson immediately confirm that it had withdrawn all infringing models from sale, make available for inspection each watch design being offered for sale by Hudson, and provide documentation for all acquisition of watches from DSD. *Id.* Cartier stated that "if [it] did not receive a positive response to this letter by the end of the week, [it would] proceed with litigation." *Id.*[1] Hudson responded saying the requested records would not be produced and urged Cartier to consider the matter closed. See Cartier's Motion to Dismiss, Exhibit M. On August 12, 2004, two days after Cartier's letter stating it would initiate litigation at the end of the week if its demands were not met, and one day before the week ended, DSD filed the present action. On August 18, 2004, Cartier filed suit in the Southern District of New York against Hudson, DSD, and several other defendants.

▮ The Complaint includes counts for Declaratory Judgment of Non–Infringement of the Patents in Suit (Count I), Declaratory Judgment of Invalidity of the Patents in Suit (Count II), and Declaratory Judgment of Non–Infringement of the Trademarks in Suit (Count III). Cartier moves to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(7) and 19(b) or in the alternative to dismiss in favor of the infringement suit brought by Cartier in the Southern District of New York. For the following reasons, this Court will exer-

---

1. DSD's counsel was sent a copy this letter on the same date it was sent to Hudson. *See id.*

cise its discretion and dismiss these proceedings in favor of the New York action because the Pennsylvania case was an anticipatory filing, and because allowing the Pennsylvania case to proceed would be duplicative and a waste of judicial resources.

## II. Legal Standard and Analysis

### A. *Anticipatory Filing*

■ A district court's decision to entertain a declaratory action is discretionary. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("consistent with the nonobligatory nature of the remedy, a district court is authorized in the sound exercise of its discretion, to stay or dismiss an action seeking declaratory judgment...."). In those cases where two federal district courts have concurrent jurisdiction, the district court in which the first case was filed generally has jurisdiction. *See EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir.1988). However, "courts have consistently recognized that the first filed rule is not a rigid or inflexible rule to be mechanically applied" and "courts have rejected the rule ... when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Id.* at 976. *See also IMS Health, Inc. v. Vality Technology Inc.*, 59 F.Supp.2d 454, 463 (E.D.Pa.1999) (stating that the paramount concern is whether the first-filed action was filed in anticipation of imminent judicial proceedings). "Exceptions to the first-filed rule are not rare and are made when justice or expediency requires," including when the first-filed action is the result of forum shopping and "if the balance of convenience favors the second forum." *Hunt Mfg. Co. v. Fiskars Oy AB*, 1997 WL 667117, *3 (E.D.Pa. Oct.2, 1997).

The record of correspondence between Cartier and DSD prior to the filing of this action reveals that the parties were attempting to settle the dispute without resort to litigation. On August 10, 2004, Cartier communicated to DSD that it would forebear from initiating suit so long as cooperation was forthcoming, and stated that it would initiate suit if its demands were not met by the end of the week. In anticipation of that litigation, DSD filed the present suit.

The short amount of time, four business days, between the first and second filing further confirms the anticipatory nature of the filing. *See IMS Health,* 59 F.Supp.2d at 463 (stating that "the bad faith inquiry also encompasses consideration of the amount of time between the declaratory and affirmative filing, with a shorter period indicating bad faith"); *One World Botanicals Ltd. v. Gulf Coast Nutritionals,* 987 F.Supp. 317, 329 (D.N.J.1997) (finding bad faith when a second affirmative suit was filed seven days after the declaratory judgment suit was filed). Here, it appears that Cartier delayed its filing in reliance upon ongoing settlement negotiations and partial cooperation with its request by DSD. The initial cease-and-desist letters gave dates certain by which an action would be filed against the respective recipients unless a positive response was received. Complaint, Exhibits 1 and 3. DSD requested that Cartier refrain from litigation and that it wished to resolve the dispute amicably. Complaint, Exhibit 4. However, when Cartier's demands were not met, Cartier again made clear that suit would be imminent. On August 10, 2004, Cartier wrote Hudson that "if we do not receive a positive response to this letter by the end of the week, we are instructed to proceed with litigation ..." Complaint, Exhibit 6. DSD filed the present action two days later.

## B. *Judicial Economy*

District courts have discretion in entertaining declaratory judgment actions to make a "reasoned judgment whether the investment of judicial time and resources in a declaratory judgment will prove worthwhile in resolving a justiciable dispute." *Minnesota Mining and Manufacturing Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed.Cir.1991). *See National Foam, Inc. v. Williams Fire and Hazard Control, Inc.*, 1997 WL 700496, *9 (E.D.Pa. Oct.19, 1997) (stating that "considerations such as the importance of conservation of judicial resources and the comprehensive disposition of litigation may mandate dismissal of [a] declaratory judgment action").

The New York action initiated by Cartier includes DSD, Hudson, and DSD's three main suppliers; all of the latter are New York companies located in that state. *See* Cartier's Motion to Dismiss, Exhibit N. The same issues that are before this court—the validity of the trade dress and design patents, and whether the watches sold by DSD infringe on those rights—will be litigated in New York. Indeed, DSD concedes that having two actions on the same subject matter pending in two different courts does not serve judicial economy. *See* DSD's Reply in Opposition to the Motion to Dismiss at 15. While DSD would prefer dismissal of the New York action, there is no evidence the other parties to that litigation would be subject to personal jurisdiction here, and Cartier and the four other defendants in the New York action are based in New York. Accordingly, this Court concludes it would be a waste of judicial resources to have both courts considering the same issues at the same time.

## III. Conclusion

For the foregoing reasons, the Court will grant Cartier's Motion to Dismiss. An appropriate Order follows.

## *ORDER*

AND NOW, this 27th day of December, 2004, upon consideration of Cartier's Motion to Dismiss (docket no. 6), DSD's response thereto (docket no. 8), and Cartier's Reply Memorandum (docket no. 11), it is ORDERED that Cartier's Motion is GRANTED.