**UNLIMITED TECHNOLOGY, INC.**

v.

**Richard LEIGHTON, a/k/a Rick Leighton, DTS Security, Inc. and Secure Vizual, LLC**

**CIVIL ACTION NO. 17–1913**

United States District Court,
E.D. Pennsylvania.

July 19, 2017

788

Casey Green, Colleen Heckman, Fernando I. Rivera, Sidkoff, Pincus & Green, P.C., Philadelphia, PA, for Plaintiff.

Robert W. Small, Reger Rizzo & Darnall LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

Savage, J.

For purposes of applying the first-filed rule, which date governs the analysis—the date the concurrent federal case was filed in the state court or the date it was removed? The Third Circuit has not decided the issue. A few district courts, without analysis, have concluded that the operative date is the date of removal. Other courts have used the date of filing in the state court. We conclude that the date the action was filed in state court is what counts.

Unlimited Technology, Inc., filed this action to enforce the restrictive covenants in defendant Richard Leighton's employment agreement. Leighton moves to dismiss, stay, or transfer the action to the Northern District of Georgia, where he has a pending action to have the agreement declared unenforceable. Invoking the first-filed rule and 28 U.S.C. § 1404(a), Leighton argues that this action was filed after he had filed the action against Unlimited in the Georgia state court, which was removed to the United States District Court for the Northern District of Georgia. Opposing the motion, Unlimited contends that the action in this district was filed first because it was filed before the Georgia state court action was removed. Unlimited also claims that Leighton filed the Georgia action in bad faith and in anticipation of this action.

We must determine whether to rely on the state court filing date or the removal date for purposes of applying the rule, and whether exceptions to the rule apply. If the first-filed rule does not apply, we then analyze whether the action should be transferred pursuant to 28 U.S.C. § 1404(a).

We conclude that because the operative date for applying the first-filed rule is the date the case was filed in the state court and not the date of removal, the Georgia action was the first-filed action. However, we shall not apply the first-filed rule because the Georgia action was anticipatory and in bad faith. Therefore, the motion to transfer shall be denied.

### Background

This dispute began when Leighton left his employment with Unlimited, taking with him Unlimited's largest customer. Af-

ter his departure, Unlimited conducted an internal investigation which, it alleges, revealed that he had been planning to leave and start a competing business while still working at Unlimited. Unlimited considered Leighton's leaving and starting a business a breach of the non-compete provision in his employment contract and an unauthorized taking of trade secrets.

Leighton began his employment with Unlimited, a security services company, in January 2014.[1] As Unlimited's Vice President of Sales and its highest paid employee, he earned approximately $350,000 annually.[2] His employment agreement contained non-compete, non-disclosure, and non-solicitation provisions.[3]

When Leighton joined the company, he brought with him Home Depot as a client. When he left, he took Home Depot, which had become Unlimited's largest customer.[4]

The parties dispute the reasons why Leighton joined Unlimited and what transpired at the time of his departure. According to Leighton, Unlimited reneged on its promise to give him an equity interest in the company.[5] He claims that he was instead demoted in December 2015.[6]

After his departure on September 29, 2016, Leighton operated his own security services business in Georgia, taking with him the Home Depot account. After he announced he would be leaving the company, Leighton alleges he and Unlimited agreed to continue working together on some Home Depot projects.[7] He claims that Brent Franklin, President of Unlimited, confirmed this agreement via email on October 11, 2016.[8]

Unlimited disputes the existence of any post-employment agreement. Instead, it claims that Leighton threatened to impede any future business with Home Depot if the company attempted to enforce the restrictive covenants in his employment agreement.[9] Having lost Home Depot as a client, Unlimited agreed to serve Home Depot as Leighton's subcontractor.[10]

After his departure, Leighton contracted Unlimited to complete a project for Home Depot. He contends that Unlimited failed to adequately perform. At Home Depot's request, Leighton did not offer Unlimited any more Home Depot work.[11] The parties had no further contact until the lawyers became involved.

On March 31, 2017, Casey Green, counsel for Unlimited, sent Leighton a cease-and-desist letter, demanding that Leighton or his counsel respond by April 17, 2017 "to avoid litigation."[12] On April 7, 2017, Leighton's counsel in Georgia, Charles Hawkins, called Green to discuss potential settlement. Green claims and Hawkins de-

---

1. Compl. (Unlimited Compl.) (Doc. No. 1) ¶ 1.

2. *Id.* ¶¶ 10–11; Pl. Opp'n to Mot. to Dismiss (Doc. No. 7–1) at 5, ECF 9.

3. Mot. to Dismiss Ex. G, Employment Agreement and Non–Disclosure Agreement (Doc. No. 4–9) at ECF 18–21.

4. Unlimited Compl. ¶ 24.

5. *Id.* Ex. I, Compl., *Leighton v. Unlimited Tech. Inc.*, Civ. No. 2017–cv–288891 (Ga. Super. Ct. Apr. 18, 2017) (Leighton Compl.) (Doc. No. 1–2) ¶ 10, at ECF 4–20.

6. Leighton Compl. ¶ 15.

7. *Id.* ¶ 18.

8. Mot. to Dismiss Ex. E, Leighton Compl. Ex. C, Email Exchange Between Richard Leighton and Brent Franklin, Oct. 11, 2016 (Doc. No. 4–7) at ECF 25–27.

9. Unlimited Compl. ¶ 26.

10. *Id.* ¶¶ 24–29.

11. Leighton Compl. ¶¶ 25–29.

12. Unlimited Compl. Ex. H, Cease–and–Desist Letter from Casey Green to Richard Leighton, Mar. 31, 2017 (Cease–and–Desist Letter) (Doc. No. 1–2).

nies that during the phone call, he assured Hawkins that suit would not be commenced while the parties were engaged in discussions.[13]

After discussing the case with his client, Hawkins spoke to Green again on Thursday, April 13, 2017. The attorneys dispute what was said during this phone call. They agree Unlimited wanted certain information. Green claims that Hawkins agreed to "voluntarily disclose" information with Unlimited for settlement purposes only.[14] Hawkins counters that they merely discussed "the possibility" of Leighton sharing information.[15] Hawkins insists that Green set a deadline of Monday, April 17, for Leighton to provide the information.[16] Green denies that he gave any deadline.[17]

Following up on the telephone conversation earlier that day, Green sent Hawkins an email listing the documents Unlimited needed to assess whether there was a breach of contract and a theft of trade secrets. Green reiterated that Unlimited was still interested in reaching "an amicable pre-litigation settlement."[18] The email did not set a deadline.

Hawkins ignored Green's email. Instead, without warning, he filed suit in the Georgia state court on April 18, 2017.[19] In his complaint, Leighton seeks a declaration to clarify his rights and obligations, and to avoid violating his employment agreement. Specifically, he asks the court to declare that he did not violate any provision of his employment agreement because the parties had entered into a post-employment agreement that resulted in a novation, or at least, a substantial modification of the original agreement.

Only after Leighton filed his motion in this action did Hawkins attempt to justify filing the Georgia action without notice. He explains that the document request was "far more extensive" than what they had discussed on the phone.[20] He states that "[a]ny modestly experienced attorney would know that producing such a large volume of documents on three days' notice would not be humanly possible."[21] Hawkins claims that he "did not take seriously" that Unlimited was still interested in settling, despite Green's email stating the contrary.[22] Hawkins suggests that Green "should have concluded that my clients were not interested in continuing settlement discussions after that deadline passed without any further communications from me."[23] Yet, he discussed none of these concerns with Green. If he viewed the situation as he now claims, he should have addressed his concerns with Green. Instead, he gave the impression that Leighton was cooperating and pursuing settlement.

Unlimited did not learn that Leighton had filed the Georgia action until April 24, 2017, when its registered agent in Georgia was served with a copy of the complaint.[24] Two days later, on April 26, 2017, Unlimit-

13. Affidavit of Casey Green (Green Aff.) (Doc. No. 16–1) ¶ 7; Affidavit of Charles Hawkins (Hawkins Aff.) (Doc. No. 4–9) ¶¶ 9, 13.

14. Green Aff. ¶ 9.

15. Hawkins Aff. ¶¶ 10, 14.

16. *Id.* ¶ 10.

17. Green Aff. ¶¶ 22–24.

18. Cease–and–Desist Letter (Doc. No. 1–2) at ECF 1–3.

19. Leighton Compl. at ECF 5.

20. Hawkins Aff. ¶ 11.

21. *Id.* ¶ 15.

22. *Id.* ¶ 17.

23. *Id.*

24. Opp'n to Mot. to Dismiss at 10, ECF 14.

ed filed this action in the Eastern District of Pennsylvania. Unlimited removed Leighton's state court complaint to the Northern District of Georgia on May 3, 2017.[25]

Leighton has moved to dismiss, stay, and/or transfer this action. He contends that the first-filed rule favors dismissing or transferring this action to the Northern District of Georgia. Opposing the motion, Unlimited argues that the action here was filed before the Georgia action was removed to the federal court there, giving this action priority under the first-filed rule.

### First–Filed Rule

██ The first-filed rule requires, absent extraordinary circumstances, that federal cases sharing substantially similar subject matter be decided by the court where the litigation was first filed. *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Synthes, Inc. v. Knapp*, 978 F.Supp.2d 450, 455 (E.D. Pa. 2013). The rationale for the rule is to promote sound judicial administration and comity among federal courts. *EEOC*, 850 F.2d at 971. It is also designed to relieve a party who first brings a controversy into a court of competent jurisdiction from vexation of multiple litigations covering the same subject matter. *QVC, Inc. v. Patiomats.com, LLC*, Civ. No. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012).

The parties agree that the actions are substantially similar. They dispute the date the Georgia action was filed for purposes of applying the first-filed rule. Unlimited argues that the operative date is the date the action was removed, which was after this action was filed. Leighton contends it is the date the action was filed in the Georgia state court. If Unlimited is correct, the Pennsylvania action is the first-filed case. On the other hand, if Leighton is correct, the Georgia case is.

The Third Circuit has not decided whether the state court filing date or the removal date is used to determine when a case is first filed. District courts within the circuit rely upon the date of removal. *E.g.*, *Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*, Civ. No. 17-0275, 2017 WL 697913, at *2 (E.D. Pa. Feb. 21, 2017); *Just Born, Inc. v. Summit Foods Enters., Inc.*, Civ. No. 13-7313, 2015 WL 996380, at *2 (E.D. Pa. Mar. 6, 2015). District courts outside this circuit have held that the filing date of the state court action, not the date of removal, is the operative date for applying the first-filed rule. *E.g.*, *Feinstein v. Brown*, 304 F.Supp.2d 279, 282–83 (D.R.I. 2004); *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F.Supp.2d 948, 954 n.10 (E.D. Va. 1998); *Mfrs. Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 166 (S.D.N.Y. 1992).

How a case is treated after removal warrants relying on the state filing date. *Mfrs. Hanover Trust*, 798 F.Supp. at 166 (citations omitted). Once a case is removed, the federal court takes it as it is. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (citing *First Republic Bank Ft. Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992)); *Palmisano v. Allina Health Sys., Inc.*, 190 F.3d 881, 885 (8th Cir. 1999); *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F.Supp. 214, 217 (S.D. Tex. 1990). The case proceeds "as if it originally had been brought in the federal court." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3738. It does not start anew. The district court gives effect to state court rulings made prior to removal. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006) (citations omitted).

The removal petition relates back to the date the state court action was filed. Re-

**25.** *See* Docket, *Leighton v. Unlimited Tech.* *Inc.*, Civ. No. 17–1580 (N.D. Ga.).

pleading is not necessary. The time within which the removing defendant must answer the complaint is calculated from the date the initial pleading in state court was served. *See* Fed. R. Civ. P. 81(c)(2). Likewise, the statute of limitations is tolled upon filing the state court action even if the action was removed after the limitations period had expired. *See Staple v. United States*, 740 F.2d 766, 769–70 (9th Cir. 1984); *Arakaki v. United States*, 62 Fed.Cl. 244, 248 (Fed. Cl. 2004); *Morris v. Hoffa*, Civ. No. 01-3420, 2002 WL 524037, at *3 (E.D. Pa. Apr. 8, 2002) (citing *Patterson v. Am. Bosch Corp.*, 914 F.2d 384, 386 (3d Cir. 1990)).

The district courts that rely on the date of removal as the operative date reason that the first-filed rule applies only to concurrent federal actions and there is no concurrent federal case until the state court action is removed. *See, e.g., Schulmerich Bells*, 2017 WL 697913, at *2; *Just Born, Inc.*, 2015 WL 996380, at *2.[26] They reason that, until a case is removed, the first-filed rule is not triggered because there is only one federal case. In other words, those courts disregard the state court action. They do not consider the relation back of the removal petition and that the federal court takes a removed case as it is from the state court.

The courts using the removal date advise that "the plaintiff in a state civil action can avoid being the second-filed matter by simply filing a complaint in federal district court, not a state trial court at the outset." *Schulmerich Bells*, 2017 WL 697913, at *2 (quoting *N. Am. Commc'ns, Inc. v. Homeowners Loan Corp.*, Civ. No. 2006-147, 2007 WL 184776, at *3 n.1 (W.D. Pa. Jan. 22, 2007)). This suggestion supposes that the plaintiff in the state court action anticipates that the defendant will be filing a federal action in another district. It ignores the plaintiff's choice of forum and assumes that a defendant will always be looking to file its own federal action.

█ We disagree with the reasoning of the courts which fix the operative date at the time of removal and disregard the date of the state court filing. The better approach is to relate the removal date back to the state court filing date. Thus, we conclude that the state court filing date is the relevant date for applying the first-filed rule.[27]

█ The action now pending in the Northern District of Georgia is the first-filed case. This is so even though the district court in Georgia was not the first federal court to possess jurisdiction. Thus, for purposes of the first-filed rule, the Georgia action is the first-filed action because it was filed in state court before Unlimited filed its lawsuit here.

█ That does not mean this action must be transferred to Georgia. The first-filed rule is not applied rigidly. *EEOC*, 850 F.2d at 976. Exceptions, though rare, do exist.[28] They are: (1) the existence of rare

---

**26.** These decisions rely on the Third Circuit's dicta in *EEOC*, 850 F.2d at 976, to conclude that the first-filed rule only applies to concurrent federal cases. However, in *EEOC*, both cases were brought originally in federal court and had not been removed from state court. *Id.* at 973. The question we address here—whether the operative date is the state court filing date or the removal date—was not before the court.

**27.** Given our ruling that the date of the filing of a state court action that is later removed is the operative date for purposes of applying the first-filed rule, we do not reach the issue of whether a state court action that is not removed may be deemed a first-filed action. *See Cent. States Indus. Supply, Inc. v. McCullough*, 218 F.Supp.2d 1073, 1092 (N.D. Iowa 2002) (collecting cases). In this case, both actions are now federal actions.

**28.** Courts in this circuit split on whether adherence to the first-filed rule is commonplace. *Compare, e.g., Koresko v. Nationwide*

or extraordinary circumstances; (2) the first-filer engaged in inequitable conduct; (3) he acted in bad faith; (4) he engaged in forum shopping; (5) the later-filed action has developed further than the first-filed action; and (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum. *EEOC*, 850 F.2d at 972, 976.

■ Unlimited argues that we should depart from the first-filed rule because Leighton engaged in inequitable conduct and forum shopping, and the Georgia action is an improper anticipatory one. The circumstances surrounding the attorneys' discussions and the filing of the Georgia action without notice shows that filing the Georgia case was a preemptive move.

The cease-and-desist letter advised Leighton that Unlimited intended to file suit unless its conduct discontinued or its counsel heard from Leighton's counsel before April 17, 2017. It left the door open to avoid litigation. *See One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F.Supp. 317, 329 (D.N.J. 1997). Before the deadline came, Hawkins reached out to Green, giving the impression that Leighton was willing to engage in settlement discussions.

Leighton anticipated filing the Georgia action as early as when he received the cease-and-desist letter on March 31.[29] Yet, Leighton waited to file suit until after his Georgia counsel appeared to engage in settlement discussions. Had Hawkins not contacted Green before April 17, Unlimited would have concluded that litigation was the only recourse. By contacting Green, Hawkins gave the impression that litigation could be avoided. At the same time, he was planning to strike first by filing suit in Georgia.

Indeed, Hawkins filed the Georgia complaint three business days after receiving Unlimited's document request. Although the document request was overly broad and burdensome, Hawkins filed suit without raising an issue with the scope of the request or seeking any clarification. He did so without notifying Green that Leighton had no intention to comply with the request. Even if Hawkins viewed Green's document request as an indication that Unlimited had no real interest in settlement, he could have asked Green. Instead, he lulled Green into believing that the parties were working on or exploring settlement rather than litigating.

Leighton argues that neither party committed to refrain from filing suit while settlement talks continued. That may be true. But, it does not alter the fact that the attorneys were discussing a settlement, at Unlimited's invitation, to avoid litigation. Hawkins' final communication with Green on the morning of April 13 left Green with the reasonable impression that settlement discussions were ongoing. The cease-and-desist letter, Hawkins' outreach and apparent willingness to pursue settlement, and his lack of objection to the document request induced Unlimited to forgo filing suit in reliance upon ongoing settlement negotiations. *Drugstore–Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F.Supp.2d 620, 623 (E.D. Pa. 2004).

*Life Ins. Co.*, 403 F.Supp.2d 394, 400 (E.D. Pa. 2005) ("[D]ue consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule"), and *Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, Civ. No. 03-3185, 2003 WL 22358439, at *4 (E.D. Pa. Sept. 10, 2003) (departures from the first-filed rule are rare),

with *FMC Corp. v. AMVAC Chem. Corp.*, 379 F.Supp.2d 733, 744 (E.D. Pa. 2005) (exceptions to the first-filed rule are not rare, rather, departure occurs where justice requires).

**29.** Counsel for Leighton conceded this at oral argument.

Consequently, in the absence of any objection to the request and in light of Hawkin's last communication discussing a possible resolution, one would reasonably presume that discussions were continuing.[30]

The timing of the Georgia filing suggests Leighton's filing the Georgia action was an "attempt to preempt" imminent legal action, which weighs against applying the first-filed rule. *PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, Civ. No. 09-00896, 2009 WL 2326750, at *7 (E.D. Pa. July 28, 2009) (citing *EEOC*, 850 F.2d at 977). Thus, the filing of the Georgia action was anticipatory and the conduct inducing Unlimited to forgo litigation was in bad faith.

Leighton was forum shopping when he selected Georgia because he believes Georgia law disfavors restrictive covenants and choice-of-law provisions. In his Georgia complaint, he alleges that there was a post-employment agreement which operates as a novation to his employment agreement. Unlike the employment agreement, the alleged novation does not include a Pennsylvania choice-of-law provision.[31] Further, he believes that even if there were no novation, the restrictive covenants and choice-of-law provision in his original employment agreement are unenforceable under Georgia law.[32]

Because we conclude that Leighton's filing was anticipatory and in bad faith, we shall decline to apply the first-filed rule.

Still, we must consider Leighton's motion to transfer the action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

### Transfer Pursuant to 28 U.S.C. § 1404(a)

■ A defendant moving for transfer of venue must show that (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and the witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of relevant factors tips in favor of or against transfer. *Jumara*, 55 F.3d at 879–80.

■ This action could have been brought in the Northern District of Georgia. Leighton resides there and his related companies which are also defendants are located in that district. *See* 28 U.S.C. § 1391(b)(1) (in diversity case, venue proper where defendant resides). Thus, in determining whether to transfer the case, we must carefully weigh the relevant public and private interests. *Shutte*, 431 F.2d at 24–25.

---

**30.** Leighton's counsel also conceded at oral argument that it is reasonable to interpret Hawkins' silence as an indication that they were in the process of complying with the document request.

**31.** Employment Agreement and Non–Disclosure Agreement (Doc. No. 4–9) ¶ 12, at ECF 20; Mot. to Dismiss Ex. C (Doc. No. 4–5).

**32.** Although Unlimited cites *FMC* for the proposition that Leighton's filing was anticipatory, those facts are distinguishable. There,

the first-filing party initiated suit *within* the response period provided in the cease-and-desist letter. *FMC*, 379 F.Supp.2d at 744 (citing *EEOC*, 850 F.2d at 976; and *Eui Seob Kim v. Su Heon Kim*, 324 F.Supp.2d 628, 636 (E.D. Pa. 2004)). Here, however, the deadline in the cease-and-desist letter was no longer in play once Hawkins contacted Green. That *FMC* is distinguishable does not change the outcome. As we noted, there are additional facts present here indicating the anticipatory nature of the Georgia filing.

■ Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and (9) public interest factors, such as congestion of court dockets and the relationship of the jury and the community. *Jumara*, 55 F.3d at 879–80. Depending on the nature and facts of the case, these factors overlap and are intertwined.

■ Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Despite this wide latitude, a motion seeking transfer should not be granted without a careful weighing of factors favoring and disfavoring transfer. *See Shutte*, 431 F.2d at 24–25.

### Plaintiffs' Choice of Forum

■ The plaintiffs' choice of forum is typically accorded "paramount consideration." *Shutte*, 431 F.2d at 25; *see also Jumara*, 55 F.3d at 879 (observing that plaintiff's choice of venue "should not be lightly disturbed" (citation omitted)). However, where a related action is pending in another forum, the plaintiffs' choice is entitled to less deference. *See QVC*, 2012 WL 3155471, at *4.

Unlimited prefers Pennsylvania. We give deference to Unlimited's choice despite the pending action in Georgia be-cause we have determined that the Georgia filing was anticipatory and in bad faith.

### Defendant's Preferred Forum

Leighton, as the defendant, prefers to litigate this case in the Northern District of Georgia. Leighton filed his action in the state where he now lives and works, not in Pennsylvania where he worked for Unlimited. He perceives Georgia to be a more favorable forum to adjudicate the dispute because venue in Georgia is more convenient for him. *See One World*, 987 F.Supp. at 329; *see also FMC Corp.*, 379 F.Supp.2d at 747 n.25. As we noted, he also believes Georgia law is more favorable to his position than Pennsylvania law.

These are reasons typically weighing in favor of the defendant's choice of forum. However, we have concluded that his Georgia filing was anticipatory in order to gain a tactical advantage. For the reasons that we decline to apply the first-filed rule, we find that this factor weighs against transfer.

### Place Where the Claim Arose

Where the claim arose implicates other factors in the analysis. It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability of witnesses, and efficiency concerns. Hence, determining the place where the claim occurred will inform the evaluation of these other factors.

The claims against Leighton arose in Pennsylvania and continue in Georgia. The breach of the employment contract, which contains a Pennsylvania choice-of-law provision, and the alleged misuse of Unlimited's trade secrets, occurred in Pennsylvania. Leighton contacted prospective clients of his new companies while employed here.

Unlimited alleges that Leighton breached his contract while working in Pennsylvania and his continuing breach impacts it here. The company's internal investigation

uncovered emails sent by Leighton soliciting business for his own companies while he was still employed at Unlimited. The emails describe a product that Unlimited contends was in development at the company prior to his arrival, built out with his input, and subsequently offered to its major customers. The emails, sent from his Unlimited email account, reference his private companies' website, email address, and other contact information.[33]

Leighton argues that the purported post-employment agreement affects his business in Georgia. He also claims that Unlimited's work as a subcontractor for Home Depot after his departure took place outside of Pennsylvania. Unlimited counters that the project was conducted in Toronto, Canada.[34] Either way, there are allegations that some work took place in Georgia.

The claims arise from Leighton's conduct in both Pennsylvania and Georgia. But, they were instigated here, and Unlimited was harmed and continues to be harmed here. Thus, this factor weighs against transfer.

### Relative Ease of Access to Sources of Proof

The majority of witnesses with information bearing on Leighton's conduct, including his former coworkers, reside in Pennsylvania. Potential third-party witnesses from Home Depot reside in Georgia.

The relevant documents, including Leighton's personnel file and email communications, are located in Pennsylvania. Neither party asserts that document production would be a problem in either forum. Given that electronically and manually stored documents can be more easily transferred across state lines than witnesses can traverse the country, this factor

disfavors transfer. *See Jumara*, 55 F.3d at 879.

### Convenience of the Parties

Unlimited has its principal place of business in Chester Springs, Pennsylvania. It directs business from Pennsylvania. Leighton, on the other hand, works and resides in Georgia. However, he still owns a home in Pennsylvania. His only employee lives in Pennsylvania. Thus, the convenience of the parties, taking into account their relative physical locations, weighs neither for nor against transfer.

Georgia is where Leighton services Home Depot, his only customer. He complains that being forced to defend suit in Pennsylvania will handicap his ability to keep up with his business. He offers no real explanation how he would be burdened in carrying out his business. He apparently travels regularly in working with Home Depot.

There is no indication whether Unlimited has a greater ability to absorb travel costs than Leighton. It claims it suffered financially when Leighton took the Home Depot account, the largest component of Unlimited's business. Nonetheless, there is no suggestion that the loss of Home Depot has crippled Unlimited's financial viability.

### Availability of Compulsory Process

Leighton argues that several essential non-party factual witnesses, including those employed by his customer, Home Depot, reside in Georgia and would be unavailable for trial in Pennsylvania. *See Jumara*, 55 F.3d at 879 (court may only consider the convenience of witnesses to the extent they are unavailable for trial). Because these witnesses are not subject to this court's subpoena power, Leighton may not have access to them if trial occurs

---

**33.** *See, e.g.,* Unlimited Compl. Exs. B–F, Emails from Leighton (Doc. No. 1–1) at ECF 5–18.

**34.** Pl. Opp'n to Mot. to Dismiss (Doc. No. 7–1) at ECF 27.

here. *See* Fed. R. Civ. P. 45(b)(2). If the case is transferred, the Northern District of Georgia will have subpoena power over the witnesses who reside in that district. *Id.* Counsel for Unlimited conceded at oral argument that even if the witnesses from Home Depot are deemed necessary, the parties may rely on their deposition testimony. Therefore, this factor does not weigh in favor of transfer.

In sum, the private interests weigh against transferring this action to the Northern District of Georgia. As we shall see, the public interest also weighs against transfer.

### Public Interest Factors

Neither party argues, nor could they, that the ultimate judgment would be unenforceable in Georgia or Pennsylvania.

Leighton claims that Georgia has a strong interest in adjudicating this action because he operates out of there. He ignores Pennsylvania's stronger interest both in ensuring that contracts entered into by its residents comply with its laws and in adjudicating employment disputes affecting Pennsylvania business and residents. Hence, from a public policy standpoint, transfer is not favored.

The relative congestion of the court dockets also leans against transfer. The Northern District of Georgia's docket is more congested. As of June 30, 2016, the Northern District of Georgia had an average of 512 pending civil cases per judgeship. The Eastern District of Pennsylvania had an average of only 370 pending civil cases per judgeship.[35] Further, the time from filing to disposition of a civil case is longer in the Northern District of Georgia than it is in the Eastern District of Pennsylvania. *Id.*

Transferring the action would not necessarily delay the litigation because the proceedings are at the same stage. A transfer motion is pending in the Northern District of Georgia. No discovery has taken place in either case. Nor has a scheduling order been entered.[36]

Transferring this case to Georgia, where it could be consolidated with the other case, would be more expeditious than having two similar cases proceeding simultaneously and possibly resulting in conflicting and contradictory decisions. However, because we have concluded that the Georgia action was anticipatory and because balancing the public and private interests weighs in favor of not transferring this action, we shall decline to transfer.

In the interest of judicial economy and efficiency, we invite the district court in the Northern District of Georgia to transfer the action pending there to this court. If transferred, the Georgia case would be consolidated with this action.

### Conclusion

We conclude that the date of the Georgia state court action is the operative date for applying the first-filed rule. Consequently, the Georgia action was filed first. However, because that filing was anticipatory and done in bad faith, we shall not apply the rule. Nor shall we transfer this action to Georgia. Balancing all the public and private interests weighs in favor of this action remaining here. Therefore, we shall deny the defendants' motion to dismiss, stay, and/or transfer this action.

**35.** U.S. District Courts, Combined Civil and Criminal Federal Court Management Statistics, National Judicial Caseload Profile (June 30, 2016), http://www.uscourts.gov/sites/ default/files/data_tables/fcms_na_distprofile 0630.2016.pdf.

**36.** *See* Docket, *Leighton v. Unlimited Technology, Inc.*, Civ. No. 17–1530 (N.D. Ga.).